# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-13-00816-CV

---

**D. K., Sr., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE DISTRICT COURT OF MILLS COUNTY, 35TH JUDICIAL DISTRICT**
**NO. 12-10-6415, HONORABLE STEPHEN ELLIS, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

D.K., Sr. ("David") appeals from the trial court's order terminating his parental rights to his minor son, D.D.K.[1] On appeal, David asserts that the evidence is legally and factually insufficient to support the trial court's finding that (1) a statutory ground for termination exists and (2) termination of David's parental rights was in D.D.K.'s best interest. *See* Tex. Fam. Code § 161.001. We affirm the trial court's judgment.

## BACKGROUND

The Texas Department of Family and Protective Services (the Department) became involved in this case when it received an allegation that D.D.K.'s home had no running water

---

[1] For the sake of convenience and privacy of the parties, we refer to D.D.K. by his initials and refer to appellant and D.D.K.'s family members by fictitious names. *See* Tex. Fam. Code § 109.002(d).

or electricity and that D.D.K. "slept outside with a piece of cardboard as a roof." According to Theresa Alexander, the Department's caseworker assigned to this case, the investigator who originally visited D.D.K.'s home "found that the home appeared to be a shed, that the restroom facility was a bucket with a toilet seat behind the refrigerator," and that the home had no running water. The investigator spoke with D.D.K., who explained that the "shed" was his great-grandmother's home, that David lived in another house on the property, and that D.D.K. "lived between the two homes."

The investigator observed that both homes were "covered in trash," that D.D.K.'s bedroom in David's house had a large hole in the floor, and that the bathroom in David's home where D.D.K. bathed "was scattered with dirty clothes, used toilet paper, tampons, and trash." David told the investigator that there was no food in the house for D.D.K. to eat, and explained that David and his girlfriend had been too busy to clean up their home. The trial court issued an order of protection naming the Department as D.D.K.'s temporary sole managing conservator. *See id.* § 153.371 (discussing rights of sole managing conservator).

The Department initially placed D.D.K. in the "New Horizons" residential treatment center in Goldthwaite, Texas. Cleve Williams, the Court Appointed Special Advocate who represented D.D.K. in this case, stated that when he visited D.D.K. at New Horizons he noticed that D.D.K.'s hands were shaking to the point that he "was having trouble keeping food on his fork." Williams spoke with the facility's staff, who told him that D.D.K. "was on a lot of psychotropic medication that so far hadn't done any good." D.D.K. visited a doctor, who determined that D.D.K.'s glucose level was low, so the doctor "put him on a patch and got them to give him some snacks," which stopped D.D.K.'s hands from shaking. However, Williams indicated that there were still issues with

2

D.D.K.'s hands shaking, and that further medical tests were needed to determine the cause. Williams explained that D.D.K. was eventually placed with "Sarah," D.D.K.'s paternal cousin. Williams testified that D.D.K. wanted to remain with Sarah and that D.D.K. had not expressed a desire to return to David.

At the final hearing on the Department's motion to terminate David's parental rights, the Department called Alexander and Williams as witnesses, who testified to the facts outlined above.[2] Alexander also testified that although David initially attended six therapy sessions as required by his family service plan, he stopped participating in therapy and failed to submit to drug tests. *See id.* § 263.106 (requiring trial court to incorporate Department's service plan into a court order). According to Alexander, David stated that he had "given up" on trying to have D.D.K. returned.

After the Department presented its case, David's mother and grandmother testified on David's behalf. Both women stated that the Department had lied about some of the facts in this case, but they did not specify which allegations were false. David's mother explained that the reason David stopped going to therapy was because his therapist died in a fire before David completed his treatment. She also explained that David did not submit to drug tests because a lawyer advised him that the drug tests he took for his probation were sufficient. David's grandmother stated that David had been too "overwhelmed" to maintain the house, he had been overwhelmed by the requirements of his family service plan, but insisted that if the trial court gave David more time he could get his life together.

---

[2] The Department also moved to terminate D.D.K.'s mother's parental rights. Alexander testified that despite diligent efforts, the Department could not locate D.D.K.'s mother. The trial court terminated the mother's parental rights, and the mother has not appealed that order.

David arrived in court as his grandmother was finishing her testimony. David initially testified that he was willing to relinquish his parental rights to D.D.K. based on the Department's prior assertions that involuntary termination could have negative consequences for David in the future.[3] However, when David's attorney suggested that the trial court might give him a chance to continue performing his family service plan, David stated that he did not want to relinquish his parental rights.

David testified that he loved his son, that he had steady employment, and that if given another six months, he would complete all of the requirements of his family service plan. However, David admitted that it had "been a few months" since he had seen D.D.K., that he was on probation from a conviction for delivering methamphetamines, that he had been arrested for driving while intoxicated a few months before the hearing, and that he currently was delinquent in paying his child support for D.D.K. and another child. David also admitted that his grandmother used a bucket with a seat as a toilet, that D.D.K. stayed with his grandmother while David was at work, and that the conditions David and his grandmother lived in "weren't good."

Following the parties' closing arguments, the trial court found that there was clear and convincing evidence that (1) David knowingly placed D.D.K. in conditions that endangered D.D.K's physical and emotional well-being and (2) David engaged in conduct that endangered

---

[3] David stated that Alexander told him that if his rights were involuntarily terminated—as opposed to voluntarily relinquished—that termination could hurt David if the Department ever sought to terminate David's parental rights to any other children. *See* Tex. Fam. Code § 161.001(1)(M) (stating that previous termination of parental rights to other children may be statutory ground for termination in certain circumstances).

D.D.K.'s well-being.[4] *See id.* § 161.001(1)(D)–(E) (listing statutory grounds for termination). The trial court also found that there was clear and convincing evidence that terminating David's parental rights was in D.D.K.'s best interest. Based on these findings, the trial court entered a final order terminating David's parental rights. This appeal followed.

## DISCUSSION

In three issues on appeal, David asserts that the evidence is legally and factually insufficient to support the trial court's order terminating his parental rights. To terminate the parent-child relationship, the fact-finder must find clear and convincing evidence that (1) the parent has engaged in conduct set out as statutory grounds for termination and (2) termination is in the child's best interest. *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002); *see also* Tex. Fam. Code § 161.001(1) (listing statutory grounds for termination). In this case, the trial court, acting as factfinder, found that there was clear and convincing evidence that statutory grounds (D) and (E) support terminating David's parental rights. *See* Tex. Fam. Code § 161.001(D)–(E).

In his first appellate issue, David argues that the evidence is insufficient to establish that D.D.K.'s well-being was endangered. Second, David complains that all of the Department's evidence related to the condition of David's previous home rather than the condition of David's current apartment. Finally, David asserts that there is insufficient evidence to establish that terminating his parental rights was in D.D.K.'s best interest.

---

[4] However, the trial court found that there was not sufficient evidence to support the Department's allegation that David intended to abandon D.D.K. *See* Tex. Fam. Code § 161.001(1)(A) (alternative statutory ground for termination).

*Standard of review*

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). In a termination case, we review the legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the trial court's determination and will uphold a finding if a reasonable factfinder could have formed a firm conviction that its finding was true. *Id.* To give appropriate deference to the trial court's conclusions, we defer to the court's resolution of disputed facts if the record reasonably supports those findings. *Id.* An appellate court should disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable factfinder could form a firm belief or conviction that a given finding was true. *In re C.H.*, 89 S.W.3d at 18–19. We assume that the trial court resolved disputed facts in favor of its finding if a reasonable person could do so, and we disregard evidence that a reasonable factfinder could have disbelieved or found incredible. *In re J.F.C.*, 96 S.W.3d at 266. Evidence is factually insufficient only if a reasonable factfinder could not have resolved the disputed evidence in favor of its finding or if that disputed evidence is so significant that the factfinder could not reasonably have formed a firm belief or conviction that its finding was true.

*Statutory ground for termination*

David's first and second appellate issues relate to whether there is sufficient evidence to prove that a statutory ground for terminating his parental rights exists. *See* Tex. Fam. Code § 161.001(1). The trial court found that David's parental rights should be terminated pursuant to subsections (D) and (E) of section 161.001(1) of the Family Code. Under subsection (D), there must be clear and convincing evidence that David "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." *Id.* § 161.001(1)(D). By contrast, subsection (E) requires evidence that David "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See id.* § 161.001(1)(E).

Both subsections (D) and (E) require proof of child endangerment, i.e., exposing a child to loss or injury or jeopardizing a child's emotional or physical well-being. *Doyle v. Texas Dep't of Protective and Regulatory Servs.*, 16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied). Endangerment does not need to be established as an independent proposition and may be inferred from parental misconduct alone. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Subsection (D) requires proof that the environment in which the parent placed the child endangered the child's physical or emotional well-being, while subsection (E) requires proof that the cause of the endangerment was the parent's actions or failure to act. *Doyle*, 16 S.W.3d at 395-96. Only one statutory ground is necessary to support a judgment in a parental-rights-termination case. *See In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). Our analysis will focus on whether there is sufficient evidence to establish that David left D.D.K. in an environment that endangered D.D.K.'s well being. *See* Tex. Fam. Code § 161.101(1)(D).

Allowing a child to live in unsanitary conditions can support a finding that a parent has endangered the child's mental and physical well-being. *See, e.g.*, *In re M.C.*, 917 S.W.2d 268, 270 (Tex. 1996) (per curiam)(noting evidence of cockroach infestation, trash, and children eating food off ground supported finding of endangerment); *In re A.C.B.*, 198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (discussing evidence that dirty diapers, trash, and dirty clothing were mingled on floor); *Phillips v. Texas Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 348, 354 (Tex. App.—Austin 2000, no pet.) (noting that children "suffered chronic outbreaks of head lice" and were dirty and disheveled). Although there generally must be evidence that these unsanitary conditions were persistent rather than isolated, a parent's willingness to subsequently clean the home "does not controvert the evidence that [the parent] had exposed the [child] to conditions which endangered [his] well-being." *In re A.C.B.*, 198 S.W.3d at 299. Therefore, David's assertion that he has since rented and maintained a clean apartment—although potentially relevant to the best-interest finding—does not change our analysis of whether David allowed D.D.K. to live in an environment that endangered D.D.K.'s well-being. *See id.*

In this case, Alexander testified about the unsanitary conditions in which D.D.K. lived, both at David's house and David's grandmother's house. According to Alexander, both homes were full of trash; David's home had no food; the bathroom where D.D.K. bathed was full of used toilet paper, tampons, and trash; David's grandmother's home, in which D.D.K. often stayed, had a bucket with a seat that was used as a toilet; and there was a cesspool on David's property. In addition, Williams testified that D.D.K. was diagnosed as having a low glucose level that required him to eat snacks periodically. That fact, coupled with David's failure to keep food in his home,

8

indicates that D.D.K.'s living conditions were detrimental to his health. David and his grandmother acknowledged some of the unsanitary conditions in their homes, indicated that some of these conditions were ongoing, conceded that these "weren't good conditions" for D.D.K., but asserted that David had been overwhelmed and simply neglected to keep his house clean.

Considering the evidence in the light most favorable to the trial court's finding, we find that the court could reasonably have formed a firm conviction that David knowingly placed D.D.K. in conditions that endangered his physical or emotional well-being. *See* Tex. Fam. Code § 161.001(1)(D). Therefore, we conclude that the evidence is legally sufficient to support the trial court's finding that a statutory ground for termination exists. *See In re A.V.*, 113 S.W.3d at 362. Similarly, considering the evidence in a neutral light, we find that the court could reasonably have formed a firm belief or conviction that David knowingly placed D.D.K. in conditions that endangered his physical or emotional well-being. Therefore, we conclude that the evidence is factually sufficient to support the court's finding that a statutory ground for termination exists. *See J.F.C.*, 96 S.W.3d at 266. Having determined that the evidence is sufficient to support the trial court's finding on one of the statutory grounds, we need not consider whether the evidence would support other grounds for termination.[5] *See In re B.K.D.*, 131 S.W.3d 10, 16 (Tex. App.—Fort Worth 2003, pet. denied)(per curiam). We overrule David's first and second appellate issues.

---

[5] Although our analysis focuses on subsection (D), there is also evidence that David engaged in conduct that endangered D.D.K.'s well-being. *See* Tex. Fam. Code § 161.001(1)(D)–(E). David was on probation for a previous drug conviction throughout the pendency of this case and he was arrested for driving while intoxicated after D.D.K. was removed from his home. *See In re S.M.* 389 S.W.3d 483, 492 (Tex. App.—El Paso 2012, no pet.) ("evidence of criminal conduct, convictions, and imprisonment and its effect on parent's life and ability to parent may establish an endangering course of conduct.").

*Child's best interest*

In his third issue on appeal, David asserts that the evidence is legally and factually insufficient to support the trial court's finding that terminating his parental rights was in D.D.K.'s best interest. *See* Tex. Fam. Code § 161.001(2). In a parental-rights-termination case, the best interest of the child is assessed using a non-exhaustive list of factors. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006)(per curiam). These factors include (1) the child's wishes, (2) his emotional and physical needs now and in the future, (3) emotional or physical danger to the child now and in the future, (4) the parenting abilities of the parties seeking custody, (5) programs available to help those parties, (6) plans for the child by the parties seeking custody, (7) the stability of the proposed placement, (8) the acts or omissions of the parent that indicate that the existing parent-child relationship is not proper, and (9) any excuses for the acts or omissions of the parent. *See Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

The Department need not prove all nine *Holley* factors as a "condition precedent" to termination, and the absence of some factors does not bar the factfinder from finding that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 27. While no one factor is controlling, the analysis of a single factor may be adequate in a particular situation to support a finding that termination is in the child's best interest. *In re J.O.C.*, 47 S.W.3d 108, 115 (Tex. App.—Waco 2001, no pet.).

In this case, Williams testified that D.D.K. wanted to continue living with Sarah. There was also evidence that David dismissed D.D.K.'s shaking hands as a family trait rather than seeking medical diagnosis or treatment, David had not visited D.D.K. in the several months leading up to the final termination, David was on probation for drug-related charges and had been arrested

for driving while intoxicated during the pendency of this case, and David continued to be delinquent in making child-support payments for D.D.K. and David's other child. Furthermore, David failed to complete the counseling, drug screening, and parenting classes required by his family service plan, indicating that he would not take advantage of programs designed to help him in the future. *See Z.L. v. Texas Dep't of Family & Protective Servs.*, No. 03-13-00598-CV, 2014 WL 538888, at \*6 (Tex. App.—Austin Feb. 7, 2014, no pet.) (mem. op.). Finally, there was evidence that D.D.K. was adjusting well to living with Sarah, that Sarah was following up on treatment for D.D.K.'s medical conditions, and that D.D.K. was doing better in school since moving in with Sarah.

Considering this evidence in the light most favorable to the trial court's finding, we find that the court could reasonably have formed a firm belief that terminating David's parental rights was in D.D.K.'s best interest. Therefore, we conclude that the evidence is legally sufficient to terminate David's parental rights. Similarly, in considering the evidence in a neutral light, we determine that the trial court could reasonably have formed a firm belief or conviction that terminating David's parental rights was in D.D.K.'s best interest. Therefore, we conclude that the evidence is also factually sufficient to support the trial court's finding. We overrule David's third appellate issue.

## CONCLUSION

Having overruled David's three issues on appeal, we affirm the trial court's judgment terminating David's parental rights.

11

_____

Scott K. Field, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   May 9, 2014