

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-14-00300-CV

---

IN THE INTEREST OF C.M.T., S.A.P., CHILDREN

---

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10,311, Honorable Stuart Messer, Presiding

---

December 12, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

J.T., father of C.M.T.,[1] filed his notice appealing the trial court's order that terminated his parental rights. Through one issue, J.T. argues the evidence was insufficient to show termination was in the best interests of C.M.T. We will affirm the trial court's order.

### Background

C.M.T. was born in July 2011 and was almost three years old at the time of trial. For some time after the child's birth, J.T. saw him daily. After C.M.T.'s first birthday,

---

[1] To protect the parent's and child's privacy, we refer to them by their initials. See TEX. FAM. CODE ANN. § 109.002(d) (West 2002); TEX. R. APP. P. 9.8(b).

J.T. and the mother ended their relationship and J.T. ceased contact with the child. J.T. testified he tried to visit C.M.T. once after their separation but the mother then told him C.M.T. was not his child. After the Texas Department of Family and Protective Services filed an Original Petition for Protection of Child in August 2013, J.T. was confirmed through DNA testing to be C.M.T.'s father. C.M.T. lived with his mother, her boyfriend, and their child, S.A.P.,[2] until he and S.A.P. were removed due to physical neglect and neglectful supervision in 2013.

The trial court held a bench trial in July 2014. J.T., incarcerated at the time in North Dakota, participated in the trial by telephone. After hearing the evidence, the trial court terminated J.T.'s parental rights to C.M.T.[3] This appeal followed, wherein J.T. challenges only the trial court's findings as to C.M.T.'s best interests.

Analysis

Burden of Proof and Standards of Review

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subsection (1) of the statute and must also prove that termination is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001 (West 2011); *In re J.L.,* 163 S.W.3d 79, 84 (Tex. 2005). Both elements must be established; termination may not be based solely on the best interest of the child. *Tex. Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531,

---

[2] J.T. is not the father of S.A.P. and S.A.P. is not a subject of this appeal.

[3] C.M.T.'s mother voluntarily relinquished her rights to C.M.T. The mother has not appealed.

533 (Tex. 1987); *In re D.T.,* 34 S.W.3d 625, 629 (Tex. App.—Fort Worth 2000, pet. denied).

Termination decisions must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001; *see also* § 161.206(a) (West 2008). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2008). Due process demands this heightened standard because termination results in permanent, irrevocable changes for the parent and child. *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002); *see In re J.A.J.,* 243 S.W.3d 611, 616 (Tex. 2007) (contrasting standards for termination and modification). We strictly scrutinize termination proceedings and strictly construe involuntary termination statutes in favor of the parent. *Holick v. Smith,* 685 S.W.2d 18, 20-21 (Tex. 1985); *In re R.R.,* 294 S.W.3d 213, 233 (Tex. App.—Fort Worth 2009, no pet.).

Legal Sufficiency Standard of Review

In evaluating the evidence for legal sufficiency in parental rights termination cases, we determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the grounds for termination were proven. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005) (per curiam). We review all the evidence in the light most favorable to the finding and judgment. *Id.* We resolve any disputed facts in favor of the finding if a reasonable factfinder could have done so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* We consider undisputed evidence even if it is contrary to the finding. *Id.* That is, we consider

evidence favorable to termination if a reasonable factfinder could, and we disregard contrary evidence unless a reasonable factfinder could not. *In the Interest of M.R.*, 243 S.W.3d 807, 817 (Tex. App.--Fort Worth 2007, no pet.), *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). It is the task of the factfinder, here the trial judge, to evaluate the credibility of witnesses, and in our review we must defer to the factfinder's determinations on credibility issues as long as they are reasonable. *J.P.B.,* 180 S.W.3d at 573.

Factual Sufficiency Standard of Review

In reviewing the evidence for factual sufficiency, we give due deference to the factfinder's findings and do not supplant the verdict with our own. *In re H.R.M.,* 209 S.W.3d 105, 108 (Tex. 2006). We determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief that the parent violated a provision of section 161.001(1) and that the termination of the parent-child relationship would be in the best interest of the child. TEX. FAM. CODE ANN. § 161.001; *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient. *H.R.M.,* 209 S.W.3d at 108.

Best Interests

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.,* 209 S.W.3d 112,116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best

4

interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). The best interest analysis evaluates the best interest of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

The following factors are to be considered in determining the best interest of the child:

(A) the desires of the child;

(B) the emotional and physical needs of the child now and in the future;

(C) the emotional and physical danger to the child now and in the future;

(D) the parental abilities of the individuals seeking custody;

(E) the programs available to assist these individuals to promote the best interest of the child;

(F) the plans for the child by these individuals or by the agency seeking custody;

(G) the stability of the home or proposed placement;

(H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(I) any excuse for the acts or omissions of the parent.

*Holley v. Adams,* 544 S.W.2d 367, 371-72 (Tex. 1976).

The *Holley* factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.*

Application

J.T. challenges only the trial court's findings as to the best interests of C.M.T. All of the evidence J.T. emphasizes in his appellate brief comes from his testimony at the final hearing.

Considering the record before us and the relevant best interest factors, we begin with C.M.T.'s age and his desires. By the time of the final hearing, C.M.T. was three years old. The caseworker testified C.M.T. was placed, and had been since his 2013 removal from the mother's home, with his sibling in her great-grandparents home. The case worker agreed the two children were "very bonded" and separation would not be in their best interests. J.T. acknowledged C.M.T. had a sibling and agreed it was in their best interests to grow up together. The court could have taken from this evidence that C.M.T. would want to remain with his sister and not with a father he does not know.

Secondly, as to the needs of C.M.T. and the parental abilities of J.T., J.T. acknowledged C.M.T. does not know him. Testimony shows J.T. has not seen C.M.T. for nearly two years, has not visited C.M.T. or maintained any type of contact with him. J.T. has never been responsible for care of the child. J.T. told the court that while he had been diagnosed with bi-polar disorder and anxiety, neither condition would inhibit his care of C.M.T. He wanted to "try to give [C.M.T.] everything I couldn't have as a kid. Make sure he grows up in a nice, safe environment, you know, around people that love him." But, he acknowledged "[a]ll my family is in Texas" so he had no family support. His testimony identified no potential caregiver for C.M.T. other than himself. Hearing

6

this evidence, the trial court reasonably could have concluded that although J.T. has a strong desire to raise his child, his ability to meet the child's needs is questionable.

Third, the court heard of J.T.'s plans for C.M.T, and heard of the Department's plans. J.T. plans to stay in North Dakota although he has no family support there. He plans to live with a couple on his anticipated December 2014 release from incarceration, plans to obtain a job he does not yet have, and plans to obtain a residence he does not yet have. The court thus could have seen J.T.'s plans as speculative in nature. The Department told the court C.M.T. has been placed since the 2013 removal with his half-sister with her great grandparents and they want to adopt the children together.[4] J.T. acknowledged it was in C.M.T.'s best interests to grow up with his sister. The caseworker testified the siblings are close. J.T.'s plans for C.M.T. would require the children to be separated. The evidence strongly supports a conclusion it is in C.M.T.'s best interests to remain in his current home with his sister.

J.T.'s criminal conviction and its consequences further complicate his plans to raise C.M.T. J.T. testified he was incarcerated after pleading guilty to ten counts of possession of child pornography but would be released in December 2014. At that time, under North Dakota law, he would serve five years of probation and be required to register as a sex offender for some period of time. Any revocation of that probation would result in further jail time. He also acknowledged to the court one of the conditions of his probation would prohibit him from contact with any child under the age of 18 other than his biological children.

---

[4] The great-grandparents had expressed an interest in adopting the two children. The caseworker stated that if that adoption were not possible because of their age or health concerns, the goal was to pursue unrelated adoption of the two children together.

Next, some of J.T.'s testimony could have been taken by the court as excuses for his actions and omissions. He told the court he was not sure he was C.M.T.'s father until the 2013 paternity test and because of that, did not complete any services or attend any parenting classes. J.T. told the court his conduct resulting in his incarceration was a "mistake" and he had chosen to be around the wrong people in the wrong area. He would admit to viewing the child pornography only once.

The caseworker testified J.T. failed to maintain contact with the Department even after he was determined to be C.M.T's father. Her testimony also emphasized his failure to complete any services and his failure to visit or maintain contact with C.M.T., and the Department's concern over the impact on C.M.T. of J.T.'s conviction for possession of child pornography.

Finally, we note that the proven grounds for termination also may bear on the best interests analysis. *In the Interest of M.R.*, No. 07-13-00440-CV, 2014 Tex. App. LEXIS 6220, at *17 (Tex. App.—Amarillo June 9, 2014, no pet.), *citing In re C.H.,* 89 S.W.3d at 28 and *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex. App.—Amarillo 2003, no pet.). J.T. does not challenge on appeal the evidence supporting the trial court's findings he failed to support C.M.T., constructively abandoned C.M.T., failed to comply with the service plan and associated court orders, and knowingly placed or allowed C.M.T. to remain in endangering conditions or with people who engaged in behavior that endangered C.M.T. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (F), (N), and (O) (West 2011).

Evidence contrary to the court's best interests finding included J.T.'s testimony reflecting his commendable desire to raise his child and his hopes for a stable and loving homelife for the child; his willingness to take advantage of any programs offered to him; and the positive changes in his conduct since two prior 2005 felony convictions for attempted burglary.

The caseworker, the attorney ad litem and the guardian ad litem voiced their opinions that J.T.'s parental rights to C.M.T. should be terminated.

On this record, we conclude the trial court reasonably could have formed a firm belief or conviction that it was in C.M.T.'s best interests to terminate J.T.'s parental rights to the child. The contrary evidence was not so significant as to preclude the finding. The evidence thus was legally and factually sufficient to support the trial court's finding. Accordingly, we overrule J.T.'s sole issue on appeal and affirm the order of the trial court.

James T. Campbell
Justice