NO. 07-05-0230-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 19, 2006
_____

IN THE INTEREST OF A. C. B., O. B. B.,

O. C. B. AND O. D. B., CHILDREN
_____

FROM THE COUNTY COURT AT LAW OF RANDALL COUNTY;

NO. L-3535; HONORABLE JAMES W. ANDERSON, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Tamara Bailey challenges a final order terminating her parental rights to each of her four children. Citing her compliance with the service plan established by the Department of Family and Protective Services, she challenges the sufficiency of the evidence supporting the trial court's order. We affirm.

The four children of Tamara and Owen Chad Bailey[1] were born between early 1999 and the summer of 2002. The oldest is their daughter, A.C.B. The other three children are

_____

[1] The record indicates Mr. Bailey ordinarily used his middle name, and we use it here.

their sons, O.B.B., O.C.B., and O.D.B.. A caseworker from the Department of Family and Protective Services investigating a complaint of neglect in January 2003 found the Baileys' home to be unsanitary and unsafe for the children. The Baileys and the Department agreed on a plan that provided the children would stay with Tamara's mother who lived nearby while they cleaned the house to make it safe for the children. Tamara also completed a parenting class. The Department closed the case without taking further action.

The Department received a second report of neglect in October 2003. A caseworker found conditions in the house had not improved at all. The floor was covered in trash including dirty diapers, feces was smeared on some walls, dirty dishes and old food were throughout the house and the bathtub was unuseable. The children who attended school were often dirty, and smelled of urine. The children were again sent to stay with their grandmother while the house was cleaned. The children were removed in December 2003 after caseworker Katie Klaehn visited and found many of the same conditions persisted. The children were placed with a foster mother temporarily.

The Department shortly filed pleadings, supported by the affidavit of Klaehn setting out the circumstances prompting removal of the children. The petition sought relief that included termination of the parental rights of both parents. As grounds for termination the petition alleged the parents knowingly placed or allowed the children to remain in conditions which endangered their physical or emotional well-being and engaged in conduct which endangered their physical or emotional well-being. *See* Tex. Fam. Code Ann. §161.001(1)(D), (E) (Vernon Supp. 2005).

On December 15, 2003, the trial court signed an agreed temporary order naming the Department temporary managing conservator and imposing several conditions on the parents. The conditions required the parents to undergo psychological and psychiatric evaluations, participate in counseling, complete parenting classes, participate in marriage counseling, and participate in the "Fly routine" designed to maintain safe and sanitary conditions in their home. The temporary order also required the parents to comply with the original or any amended service plan established by the Department. The Baileys signed the original service plan on December 18, 2003. *See* Tex. Fam. Code Ann. § 263.103 (Vernon 2002).

During a January 2004 visit, caseworker Klaehn found the house was still in very poor condition and the utilities had been disconnected. In February caseworker Amy Hogan found improvement in the house but determined there were still significant problems, including a general lack of cleanliness. By the summer of 2004, the third caseworker, Pam Pollard, found significant improvement in the condition of the home, but was not satisfied it had become a safe environment for the children. During this time Tamara completed a parenting class and participated in some counseling. An amended service plan signed by the Baileys August 3, 2004 stated the long-range goal as family reunification by December 2004. A third plan, dated August 11, 2004, not signed by the Baileys, listed the long-range goal as "unrelated, adoption." In September 2004 Chad committed suicide.

A fourth caseworker was assigned and the trial court conducted the third permanency hearing in the case in November 2004. The order from that hearing recited

3

the court's finding that Tamara had "not demonstrated adequate and appropriate compliance with the service plan." The foster mother with whom the children had been placed intervened in the suit in February 2005 seeking appointment as sole managing conservator.

The case was tried to the bench over four days in May and June 2005. Witnesses included Department caseworkers, counselors and medical experts, Tamara Bailey, her sister-in-law and mother-in-law. The trial court ordered Tamara's parental rights terminated, finding the Department established by clear and convincing evidence both grounds alleged in the petition and that termination was in the best interest of the children. The order named the Department permanent managing conservator of each child.

Tamara's single appellate issue challenges the factual sufficiency of the evidence supporting termination. The substance of her argument is that the trial court erred by terminating her parental rights based on the facts and circumstances existing at the time the children were removed rather than those obtained at the time of trial. She does not contend the evidence of conditions in December 2003 was insufficient to support termination. Citing only Family Code section 263.101, Tamara argues the Family Code allows her a reasonable period to provide a safe environment for the children. She further argues, without citation to supporting authority, that her success in complying with the service plan is critical to the decision to terminate her parental rights. A substantial part of the trial was devoted to evidence seeking to establish Tamara's compliance or non-compliance with specific elements of the service plan.

Section 161.001 authorizes termination of parental rights on proof of two elements by clear and convincing evidence; first, that the parent committed any of the enumerated acts or omissions, and second, that termination is in the best interest of the child. Tex. Fam. Code Ann. §161.001 (Vernon Supp. 2005); *In re S.A.P.*, 169 S.W.3d 685, 695 (Tex.App.–Waco 2005, no pet.); *In re S.M.L.D.*, 150 S.W.3d 754, 756 (Tex.App.–Amarillo 2004, no pet.). Nothing in the language of Chapter 161 imposes on the Department a burden to establish non-compliance with a service plan under Chapter 263[2] or suggests that compliance with a service plan prevents an affirmative finding on either element.

Case law indicates a parent's compliance with a service plan does not preclude a finding that termination is in the child's best interest. In *In re M.G.D.*, 108 S.W.3d 508 (Tex.App.–Houston [14th Dist.] 2003, no pet.), the court found that a parent's "recent turnaround" and compliance with a service plan are factors jurors should consider in a determination of best interest, but are not determinative. *Id*. at 515. *See also In re J.W.*, No. 10-03-040-CV, 2003 WL 22023977 (Tex.App.–Waco August 27, 2003, no pet.) (mem. op.) (citing and quoting *In re M.G.D.,* 108 S.W.3d at 515); *In re S.A.W.*, 131 S.W.3d 704, 709 (Tex.App.–Dallas 2004, no pet.) (termination in best interest despite mother's lifestyle improvements and eventual compliance with service plan). *But see In re W.C.*, 98 S.W.3d 753, 766 (Tex.App.–Fort Worth 2003, no pet.) (finding evidence termination was in best interest factually insufficient, citing, *inter alia*, uncontradicted evidence mother "has done everything the Department required of her"); *In re K.C.M.*, 4 S.W.3d 392, 399

---

[2] This case does not present a circumstance in which a ground for termination is the parent's failure to comply with a court order based on a service plan. *See* Tex. Fam. Code Ann. § 161.001(1)(O) (Vernon Supp. 2005).

(Tex.App.–Houston [1ˢᵗ Dist.] 1999, pet. denied), *overruled in part on other grounds*, *In re C.H.*, 89 S.W.3d 17 (Tex. 2002) (finding evidence supported contention that "jail turned [mother's] life around" and rendered evidence that termination was in best interest factually insufficient).

With their focus on Tamara's performance under the service plan, the parties have not provided us a discussion of the *Holley* factors typically applied to a determination of the best interest of children in termination proceedings. *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). That non-exclusive list of factors includes the desires of the child; the emotional and physical needs of the child now and in the future; the emotional and physical danger to the child now and in the future; the parental abilities of the individuals seeking custody; the programs available to assist these individuals to promote the best interest of the child; the plans for the child by these individuals or by the agency seeking custody; the stability of the home or proposed placement; the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and any excuse for the acts or omissions of the parent. *Id.* at 372. The best interest analysis evaluates the best interest of the child, not that of the parent. *In re S.A.P.*, 169 S.W.3d at 707. A parent's performance under a service plan is likely to be relevant to several of the factors stated in *Holley*, and therefore relevant to the best interest element of section 161.001. Because these are only factors to be considered in determining best interest of the child, we cannot agree with Tamara's view that evidence she eventually substantially complied[3]

---

[3] Too, unlike the appellant in *In re W.C.*, 98 S.W.3d at 766, the evidence of Tamara's compliance with the service plans was not uncontradicted.

with a service plan prevents termination of her parental rights. *In re M.G.D.*, 108 S.W.3d at 514.

Turning to consideration of the merits of Tamara's evidentiary sufficiency challenges, we note that both elements required to support termination of parental rights are matters of fact subject to review under legal and factual sufficiency standards. *In re C.H.*, 89 S.W.3d 17 (Tex. 2002). Because those elements must be established by clear and convincing evidence, our factual sufficiency review looks at the evidence to determine if the trier of fact could reasonably form a firm belief or conviction about the truth of the allegations. *Id.* at 25.

The evidence concerning the conditions of the home in December 2003 is sufficient to support a firm conviction or belief that Tamara exposed the children to unsanitary conditions in their home which endangered their well-being. That evidence showed that dirty diapers were mingled among other trash and clothing on the floor, there was feces on the walls, and the children and their clothing were often dirty and smelled of urine.[4] The evidence showed these conditions were persistent and not isolated events. *See In re S.M.L.D.*, 150 S.W.3d at 758 (isolated events will ordinarily not establish a ground for termination). Evidence that Tamara later cleaned the house and made it physically safe for the children does not controvert the evidence that she had exposed the children to conditions which endangered their well-being. The trial court's finding Tamara knowingly

---

[4] Testimony from school personnel also indicated the older children were not properly fed.

allowed the children to remain in endangering conditions is supported by factually sufficient evidence.

With respect to the best interest element, the Department[5] cites *In re S.T.*, 127 S.W.3d 371 (Tex.App.–Beaumont 2004, no pet.), which focused its discussion of best interest on three of the factors from *Holley*. 127 S.W.3d at 379. The Department also relies on the opinions of several witnesses that termination of Tamara's rights was in the best interest of the children.[6] The testimony was not limited to the witnesses' conclusions concerning best interest, however. Several witnesses recited specific events, needs of the children or deficiencies in Tamara's ability to care for the children on which their opinions were based. That testimony went directly to the factors relevant to the trial court's determination of the best interest of the children.

Evidence of the needs of the children showed all four are being medicated for seizure disorder. In addition, A.C.D. suffers from a cerebral palsy-like condition affecting her speech and gait. More than one witness testified to the children's need for a structured home life to assure their consistent receipt of medication, and testified to the risks to their health of a return to the care of a parent unable to meet their special needs.

---

[5] The children's attorney and guardian ad litem has adopted the Department's brief on appeal.

[6] The Department also challenges Tamara's credibility. As one example, the Department cites her trial testimony in which she asserted that, before the children's removal, she and the children actually lived with her mother across the street from the marital home, and it was only by coincidence that Department representatives found her and the children at that residence. This assertion was contradicted by the presence of many dirty diapers and other indications the children resided in the marital home, and by statements of Tamara's mother and others.

With regard to Tamara's parental abilities, many of the witnesses who testified termination would be in the best interest of the children emphasized Tamara's failure to take advantage of resources and programs made available to her. Those included help offered from family members and the various programs to which she was referred by the Department. It also included evidence that much of the difficulty Tamara faced was related to clinical depression which she failed to manage effectively by following the treatment prescribed. The limited evidence concerning the effect of Chad's absence if the children were returned to Tamara included the testimony of Tamara's psychiatrist Dr. Ruben Mendoza that the absence of another parent to assist with the children increased Tamara's risk of depression. He further opined that a person suffering from depression is less likely to be able to care for herself or others. Psychologist Edwin Basham had evaluated Tamara for the Department and testified that even if she effectively managed her depression, other personality problems interfered with her ability to care for the children. This included her dependance on Chad and inability to make independent decisions in the best interest of the children. He found it likely that Tamara's pattern of "collapsing" and becoming unable to function when problems arose would repeat, rendering her unable to care for the children.

The three boys have lived with a foster mother since their removal from the Baileys' home. The evidence they have thrived in her care was undisputed. The foster mother testified to her desire to adopt all four children. There also was testimony from which the court could have concluded the children were not strongly bonded with Tamara.

9

Tamara argues her one-hour visits with the children at the Department office allowed her no opportunity to demonstrate her ability to provide a safe environment for them. She emphasizes the evidence that, by the time of trial, she was maintaining stable employment and housing, keeping her home clean, paying child support, visiting her children and properly taking medication to keep her depression under control. Evidence showed Tamara had been employed at the same job for about a year by the time of trial. Her work supervisor testified to her dependability. Despite this evidence, considering the entire record, we conclude the trial court reasonably could form a firm belief or conviction that termination of Tamara's parental rights was in the children's best interest.

There is a strong presumption that the best interest of children is served by preserving the parent-child relationship. *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Considered together with evidence of the children's favorable progress after removal and the stability of the Department's proposed placement and viewed against the factors identified in *Holley*, however, we find the evidence factually sufficient to support the trial court's finding that termination was in the best interest of the children. We overrule appellant's sole issue and affirm the judgment of the trial court.

James T. Campbell
Justice

10