NO. 07-07-0034-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 6, 2007
_____

In the INTEREST OF T.A.A.V., a child
_____

FROM THE 121st DISTRICT COURT OF TERRY COUNTY;

NO. 17,031; HON. J. BLAIR CHERRY, JR., PRESIDING
_____

*Memorandum Opinion*
_____

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Paula Jean Vickers appeals from the termination of her parental rights to her son T.A.A.V.  She does so by contending the evidence is legally and factually insufficient to show that termination is in the best interest of the child.  We affirm the judgment.

*Applicable Law*

The applicable standards of review are found in *In re J.F.C.,* 96 S.W.3d 256, 266-67 (Tex. 2002) and *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002).  We refer the litigants to those opinions for a discussion of them.

Moreover, we note that evidence establishing a statutory ground for termination may also be used to support a finding that the best interest of the child warrants termination of the parent/child relationship.  *In re C.H.,* 89 S.W.3d at 28; *In re P.E.W.,* 105 S.W.3d 771,

779 (Tex. App.–Amarillo 2003, no pet.). The court found by clear and convincing evidence that Vickers 1) voluntarily left the child alone or in the possession of another not the parent and expressed an intent not to return, 2) knowingly placed or knowingly allowed the child to remain in conditions or surroundings that endangered the physical or emotional well-being of the child, 3) engaged in conduct or knowingly placed the child with persons who engaged in conduct that endangered the physical or emotional well-being of the child, and 4) used a controlled substance (as defined by chapter 481 of the Texas Health and Safety Code) in a manner that endangered the health or safety of the child and failed to complete a court-ordered substance abuse treatment program. Vickers does not contest these findings on appeal.

Also noteworthy are the indicia which are known as the *Holley* factors. They were considered by the court in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), to be helpful in assessing the child's best interest. Included among them are: 1) the desires of the child, 2) the emotional and physical needs of the child now and in the future, 3) the emotional and physical danger to the child now and in the future, 4) the parental abilities of the individuals seeking custody, 5) the programs available to assist those individuals to promote the best interest of the child, 6) the plans for the child by those individuals seeking custody, 7) the stability of the home, 8) the acts or omissions of the parent which may indicate that the existing parent/child relationship is not a proper one, and 9) any excuse for the acts or omissions of the parent. *In re P.E.W.,* 105 S.W.3d at 779-80. One need not prove that each *Holley* factor favors termination, *id.* at 780, and the list is not exhaustive. *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.–Amarillo 2003, pet. denied). There must simply be enough evidence from which the factfinder can reasonably form a

firm conviction or belief that the child's best interest warrants termination. *In re P.E.W.,* 105 S.W.3d at 780.

*Application of Law*

Termination was sought by Denise Ann and Bobby Joe Humphrey (the Humphreys) who wished to adopt the child. The Humphreys were unrelated to the child, but he was often left in the care of Bobby Joe's daughter Dasha Humphrey who was a friend of Vickers. An affidavit of relinquishment of parental rights was executed by Vickers on April 28, 2004, with her knowledge that the Humphreys wished to permanently care for the child. However, Vickers revoked that affidavit on May 7, 2004.[1] There was evidence that Vickers believed the child was better off with the Humphreys but that she was afraid her adopted mother, Paula June Vickers (Paula June),[2] upon whom she relied financially, would be angry when she learned of her execution of the document. Further, there was evidence that Paula June pressured Vickers into making the revocation.[3]

Also appearing of record is evidence that Vickers was twenty three at the time of trial, had three children by three different fathers,[4] and had been married to none of them. She not only failed to complete high school but also held only two jobs for a total of

---

[1]Vickers claimed at trial that she was incapacitated by having used crack cocaine that morning and that she believed she was only granting the Humphreys temporary custody of her son while she was going to have to "sit . . . out" a ticket for driving without insurance which her grandmother paid on the same day Vickers signed the affidavit.

[2]Paula June Vickers was both the adopted grandmother and mother of Vickers. Paula June had adopted Vickers' biological mother, Sandy Holcombe, when she was two years old, and then adopted Vickers after she was born.

[3]When Paula June first learned that the Humphreys had the child, Vickers told Paula June that he had been taken or kidnaped and Paula June called the police.

[4]T.A.A.V. was the middle child of Vickers.

approximately four months since 2004. So too do we find evidence that she 1) did not maintain a permanent home as she lived off and on with her adopted mother, her biological mother, various boyfriends, or friends, 2) had never been self-supporting, 3) lived in several places lacking utilities, 4) used cocaine and crack cocaine from 2000 through April 2004, often on a daily basis and while pregnant, 5) smoked and drank while pregnant with her first child, 6) was under the influence of intoxicants when in the presence of another of her children, 7) left T.A.A.V. on many occasions with other persons, including Dasha Humphrey, so she (Vickers) could party or use drugs, 8) lost custody of her oldest child on one occasion based on an allegation she had burned him with a cigarette, 9) pled guilty and was placed on probation for food stamp fraud in October 2004, 10) attended a party at which intoxicants were ingested days prior to pleading guilty to the food stamp charge, 11) had altered checks given to her by her adopted mother, 12) could not provide proof that she had completed a court-ordered drug treatment program she entered in August 2004, 13) could not remember how long the drug treatment program lasted, who her sponsor was, or any of the twelve steps involved in it, and 14) stated she had not stopped drinking alcohol until January 2005, even though the terms of her 2004 probation required her to do so. Other evidence revealed that Child Protective Services was called to the home of Vickers' biological mother when Vickers was living there with T.A.A.V. because the living conditions were filthy. Her boyfriend's house whereat she also lived was similarly filthy. Once, Vickers' adopted mother had to retrieve T.A.A.V. and his brother from the home of a friend of Vickers after a party was held there and all the adults had gone to sleep leaving the children unsupervised. Finally, evidence disclosed that the Humphreys

4

had cared for the child for two and one-half years before trial, made a good living, had a satisfactory, stable home, and bonded with the child.

Evidence that a mother cannot provide a stable, safe, and secure environment supports a finding that it is in a child's best interest to terminate the mother's rights. *See Hann v. Texas Dep't of Protective and Regulatory Services,* 969 S.W.2d 77, 83-84 (Tex. App.–El Paso 1998, pet. denied) (upholding the termination because evidence appeared of record illustrating that the parent could not provide such an environment). And, while some of Vickers' conduct involved children other than T.A.A.V., a parent's conduct directed toward one child can support termination of parental rights as to another child even though it did not occur in the child's presence. *In re S.A.P.,* 169 S.W.3d 685, 703 (Tex. App.–Waco 2005, no pet.).

Admittedly, at the time of trial, there was evidence that Vickers had passed three drug tests before trial, had exercised her supervised visitation rights with the child, was living with her adopted mother in a satisfactory home, and had possession of her other two children.[5] However, she remained financially dependent on government assistance and her adopted mother who was 69 years old and experiencing health problems. Nor had Vickers made effort to attend school or obtain employment.[6]

Given the lack of a challenge to the statutory grounds justifying termination and the evidence recited above, the trial court could have formed a firm belief or conviction that termination of Vickers' parental rights was in the best interest of the child. *In re J.F.C.,* 96

---

[5]It appears that legal custody for the oldest child remained with his father, although the father was allowing Vickers to have possession of him.

[6]Paula June stated that Vickers was learning to help in the family's pest extermination business, but there was evidence that it was not a full-time business.

5

S.W.3d at 272 (holding that although at time of trial the mother had found work, the home was a safe environment, and the parents were described as a loving couple, a factfinder could reasonably form a firm conviction or belief that termination was in the child's best interest); *In re A.C.B.,* 198 S.W.3d 294, 300 (Tex. App.–Amarillo 2006, no pet.) (holding that despite evidence that at the time of trial, the mother was maintaining stable employment and housing, keeping her home clean, paying child support, visiting her children, and properly taking her medication, the court could have formed a firm belief that termination was in the best interest of the child). Thus, we find the evidence both legally and factually sufficient.

The judgment of the trial court is affirmed.


Brian Quinn
Chief Justice

6