

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00531-CV

**IN THE INTEREST OF R.V.M.**, N.M., M.B.R.C., R.A.R.C., and S.R.R.C.

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2012-PA-01410
Honorable Charles Montemayor, Associate Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  January 21, 2015

AFFIRMED

Roseanna and Manuel R.C. appeal the trial court's termination of their parental rights.[1] They argue the evidence was insufficient to support the trial court's findings that (1) they knowingly placed or knowingly allowed their children to remain in dangerous conditions or surroundings; and (2) they failed to comply with their court-ordered family service plan.[2] We affirm.

---

[1] To protect the identity of the minor children, we refer to the children's parents by their first names and last initials and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).

[2] The appellants' brief also contains an argument embedded in the first issue complaining of the trial court's delay, but no record cites or authority are included to show the trial court committed reversible error. *See* TEX. R. APP. P. 38.1(i) (requiring a party to brief issues with citations to the record and relevant authority).

**PROCEDURAL HISTORY**

The Department of Family and Protective Services filed a petition for protection of a child, for conservatorship, and for termination of Roseanna's and Manuel's parental rights. The parties tried the case to the bench over four days between December 2013 and June 2014. The trial court terminated Roseanna's and Manuel's parental rights and awarded the Department permanent managing conservatorship. The trial court found Roseanna and Manuel "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional well-being of the children" and "failed to comply with the provisions of a court order" that incorporated the Department's family service plan. The trial court also found termination of Roseanna's and Manuel's parental rights was in the best interest of the children. Roseanna and Manuel filed this appeal.

**STANDARD OF REVIEW**

Judgments terminating parental rights must be supported by clear and convincing evidence. TEX. FAM. CODE ANN. § 161.001 (West 2014). To determine if the heightened burden of proof was met, we employ a heightened standard of review—judging whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role. *Id.* at 26. We are not to reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Sw. Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

Legal sufficiency review requires us to examine the evidence "in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or

conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could have done so, and we disregard all evidence that a reasonable factfinder could have disbelieved or found incredible. *Id.* But we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the State's heightened burden of proof by clear and convincing evidence. *Id.*

When conducting a factual sufficiency review, we evaluate "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* We hold the evidence to be factually insufficient only if, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction. *Id.*

### DANGEROUS CONDITIONS OR SURROUNDINGS

If a trial court finds termination of parental rights is in the child's best interest,[3] an order terminating parental rights may be based on a finding that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE ANN. § 161.001(1)(D) (West 2014). Generally, a parent's conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child. *In re D.J.H.*, 381 S.W.3d 606, 613 (Tex. App.—San Antonio 2012, no pet.). Our "inquiry is related to whether the environment of the children is the source of endangerment to the children's physical or emotional well-being." *In re T.N.S.*, 230 S.W.3d 434, 438 (Tex. App.—San Antonio 2007, no pet.).

---

[3] Roseanna and Manuel do not challenge the trial court's finding that termination of their parental rights was in the children's best interest.

**THE EVIDENCE**

Roseanna and Manuel had three children together: M.B. who was born in 2008; R.A. who was born in 2010; and S.R., who was born in 2011. Roseanna had two older children, R.V.M. who was born in 2001, and N.M., who was born in 2003. The Department previously removed R.V.M. and N.M. from Roseanna's custody and placed them with Roseanna's mother. After Roseanna's mother passed away, R.V.M. and N.M. moved in with Roseanna and Manuel and their three children. Manuel held a stable job at a local restaurant, and he ordinarily worked twelve-hour graveyard shifts to pay the family's bills. Roseanna stayed at home with the children. Manuel's only other family members lived in Mexico, and Roseanna's family members occasionally watched the children. In 2012, the Department received four referrals regarding Roseanna and Manuel's children.

The trial court heard evidence of Roseanna's drug use and criminal conduct. A parent's drug use and other criminal conduct may create an endangering environment when such conduct routinely subjects a child to the probability that a child will be left alone when the parent is jailed for continued violation of probationary conditions, a new drug offense, or commitment to a rehabilitation program. *In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Roseanna testified she was previously arrested for criminal trespass, resisting arrest, evading arrest, and assault of a public servant, and she went to prison for those offenses. She also admitted that during the course of the trial court proceedings, she was on probation for possession of a controlled substance, which other testimony revealed was crack cocaine. She also testified she told Madison Moore, a Department caseworker who came to the home to investigate a referral, that she used synthetic cannabis. Moore testified she saw empty synthetic marijuana bags in the trashcan at the home. Moore further testified about an incident when Roseanna and her sister came

to the Department to drop off items for the children and one of them attempted to come through security with a large bag of marijuana.

Additionally, Roseanna testified that just before the children were removed, she was involuntarily committed to a medical facility, but decided to stay voluntarily for five days. Roseanna testified she was told that she needed only sleep, and she was not prescribed any medications. Stephanie Cortez, a Family Based Safety supervisor with the Department, testified the Department received a "neglectful supervision" referral because, during Roseanna's stay at the medical facility, she tested positive for methamphetamines. Additionally, Moore testified Roseanna tested positive for amphetamines at the second home visit.

Manuel testified Roseanna's cousins took care of the children when he was at work while Roseanna was at the medical facility. He testified that one night soon after Roseanna returned home from the medical facility, S.R. appeared to have a "line" on her head. When they sought medical treatment, it was discovered that S.R. had a skull fracture. Manuel testified the children told him Roseanna's cousins locked them in a room. And the children told Manuel a television set fell on S.R.'s head, according to the testimony of Yesenia Moreno, another Department caseworker.

Three witnesses testified about the conditions of the home. "Unsanitary conditions can [also] qualify as surroundings that endanger a child." *Leal v. Tex. Dep't of Protective & Regulatory Servs.*, 25 S.W.3d 315, 325 (Tex. App.—Austin 2000, no pet.), *disapproved of on other grounds by In re J.F.C.*, 96 S.W.3d 256, 257 n.39 (Tex. 2002); *see, e.g.*, *In re A.C.B.*, 198 S.W.3d 294, 299 (Tex. App.—Amarillo 2006, no pet.) (affirming termination on "dangerous conditions or surroundings" ground when evidence showed children lived in house with feces on walls and old food, trash, dirty diapers, and dirty clothes all over the floor). Moore testified that on her first visit to investigate a referral, the home was unclean and unfit for children. She testified she gave

Roseanna and Manuel a thirty-day safety plan, but returned to find the home in a worsened condition. Moore testified she saw dog feces and an excess of bugs and roaches all over the house. Because S.R. was crawling at the time, Moore believed S.R. might have crawled through the fecal matter on the floor. Moore also saw very little food in the home, and the milk given to S.R. was expired by about a week. Moore explained she saw dirty clothes, dirty dishes, and stale food throughout the home.

Shirley, Roseanna's sister, and Shirley's girlfriend, Elsa, also testified about the conditions of the home. Shirley testified she and Elsa lived with Roseanna and Manuel for about two months to help them with the children. Shirley testified she saw rats and roaches in the home, and she made efforts to exterminate them. She further testified she assisted Manuel in remodeling the restroom to ensure there would not be any holes or mold in the walls. Elsa testified Roseanna and Manuel had about ten cats and several dogs roaming around the house and in the front and back yards. She also saw mice, cockroaches, and fleas in and around the home. Although Manuel worked throughout the night, he would come home and sleep during the day. Manuel had explained he did not clean because he would come home tired and the kids required a lot of attention, but Moore testified Manuel's schedule permitted enough time for him to maintain the home with the help of the two oldest children. Although there was evidence that Manuel eventually cleaned up the home, this does not controvert the evidence that Roseanna and Manuel previously had exposed the children to an environment endangering their well-being. *See In re A.C.B.*, 198 S.W.3d at 299.

Additional evidence showed Roseanna was violent toward Manuel and the children. "A parent's abusive or violent conduct can produce a home environment that endangers a child's well-being." *In re J.I.T.P.*, 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

Jennifer Uriegas,[4] another Department caseworker, testified the children told her Roseanna has held their hands over a hot stove and would strike them "with whatever she could get her hands on." Moreover, Elsa testified that when she and Shirley lived with Roseanna and Manuel, she observed an incident when Roseanna, who was drunk, got into an argument with Manuel and choked him for several minutes causing Manuel to cry profusely. Carlos Castillo, a licensed professional counselor who counseled Roseanna and Manuel, testified Manuel told him during an individual session that Manuel would become upset with Roseanna and try to leave, but she would become violent with him to force him to stay. Although Manuel testified Roseanna never physically abused him, the trial court could have credited the contradictory testimony of Elsa, Uriegas, and Castillo.

Although the evidence showed Roseanna was primarily responsible for the endangering conditions and surroundings, the trial court heard testimony that Manuel prioritized his spousal relationship over his obligation to provide a safe environment for his children. Castillo testified Manuel would express concerns of Roseanna using drugs and alcohol, but Manuel told Castillo that he gave Roseanna money for alcohol. Castillo also testified Manuel seemed afraid of Roseanna and Manuel admitted Roseanna would be violent with him. Despite Roseanna's conduct, the evidence showed Manuel remained committed to his relationship with Roseanna.

## CONCLUSION

The evidence was sufficient for the trial court to reasonably form a firm belief or conviction that Roseanna and Manuel knowingly placed or knowingly allowed their children to remain in dangerous conditions or surroundings. In support of their contention that the evidence was insufficient, Roseanna and Manuel cite to Shirley's testimony that she never witnessed any

---

[4] Two court reporters recorded the proceedings; one court reporter spelled the name "Uriegas" and the other spelled the name "Iruegas."

physical violence; Elsa's testimony that she saw no signs of abuse toward the children while she lived with them; and Moore's testimony that Manuel was not aggressive in dealing the Department. This evidence does not controvert the testimony describing the violence in the home. Having reviewed the record, we hold the trial court's finding was supported by legally and factually sufficient the evidence.[5] Therefore, we affirm the trial court's judgment.

Luz Elena D. Chapa, Justice

---

[5] Because we hold the evidence is sufficient to support the trial court's finding of knowing endangerment, we need not address Roseanna and Manuel's second issue regarding compliance with the court-ordered family service plan. *See* TEX. R. APP. P. 47.1 (requiring us to hand down an opinion as brief as practicable while addressing all issues necessary to the final disposition of the appeal); *see also* TEX. FAM. CODE ANN. 161.001(1) (West 2014) (permitting termination of parental rights upon a finding of knowing endangerment or failure to comply with a court-ordered plan).