

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

___

No. 07-16-00120-CV

___

**IN THE INTEREST OF K.M., I.D., AND D.G., CHILDREN**

___

On Appeal from the 100th District Court
Childress County, Texas
Trial Court No. 10416, Honorable Stuart Messer, Presiding

___

June 29, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

E.G., the mother of K.M., I.D., and D.G.,[1] appeals the trial court's order terminating her parental rights to her children. We will affirm the order of the trial court.

Background

Through one issue, E.G. challenges the sufficiency of the evidence to support the trial court's finding that termination of her parental rights was in the best interest of her

___

[1] To protect the children's privacy, we will refer to the mother and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8(b).

three children.  E.G. does not otherwise challenge the grounds under which the trial court terminated her parental rights.

At the time of the final hearing, E.G. was 31 years old, K.M. was 9 years old, I.D. was 4, and D.G. was one-and-a-half. The children were removed from E.G.'s care in August 2014 after I.D. tested positive for methamphetamine.  At the time of her birth in July 2014, D.G. tested positive for the same substance and E.G. admitted to using methamphetamine while pregnant with D.G.[2]  Appellee, the Texas Department of Family and Protective Services, filed a petition seeking removal of the children from E.G.'s care following the positive drug tests and after noting concerns over her neglectful care of the children.  K.M. and I.D. were placed in a foster home together and D.G. was placed in a separate foster home. K.M. later was placed in a residential treatment facility where he remained at the time of the final hearing.  I.D. was placed in another foster home.

A final hearing was held in February 2016.  At the conclusion of the hearing, the trial court granted the Department's request for termination of E.G.'s parental rights to her three children.[3]  E.G. appealed, challenging the trial court's finding that termination of her parental rights was in the children's best interest.

---

[2] K.M.'s drug test was negative.

[3] The parental rights of the children's three fathers also were terminated.  None of the fathers have appealed.

Analysis

The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

Under the legal sufficiency analysis, we examine all of the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex. 2002). We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible. *Id.* However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence." *Id.* If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable. *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(b)(1) and termination is in the children's best interest. TEX. FAM. CODE ANN. § 161.001(b)(2) (West 2015); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976). Only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Thus a termination order may be affirmed if it is supported by legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

There is a strong presumption that keeping children with a parent is in the children's best interest. *In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006). But prompt and

4

permanent placement of children in a safe environment is also presumed to be in their best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2008). The best interest analysis evaluates the best interest of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.). The following factors are among those the court may consider in determining the best interest of each child: (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

As noted, E.G. has not challenged the court's predicate termination findings under Family Code subsections 161.001(b)(1)(E), (O) and (P). Unchallenged predicate findings are binding on the appellate court. *In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *see IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.,* 938 S.W.2d 440, 445 (Tex. 1997). These unchallenged predicate findings can therefore support the best interest finding. *See In re C.H.,* 89 S.W.3d at 28 (holding that the same evidence may be probative of both section 161.001 predicate grounds and best interest).

The primary concern in this case is E.G.'s history of drug use and relapse. E.G. testified she began using marijuana and drinking alcohol as a teenager, started using

methamphetamine when she was 20 or 21 and used "heavily" in 2007. E.G. testified she again started using the drug when she was about six months pregnant with D.G. She also breastfed D.G. on at least one occasion after using methamphetamine. E.G. denied using drugs while in the presence of her children and told the court she did so when the children were in bed or at school. She also claimed, however, she was "very observant" of her children while high on methamphetamine, a statement the trial court could have taken as indicative of her use in their presence. E.G.'s history of endangering and injurious conduct toward her children weighs in favor of the trial court's finding.

While E.G. testified she had been sober for 130 days by the day of the hearing, evidence also showed she had relapsed more than once, even after completing inpatient treatment and intensive outpatient treatment. E.G. tested positive for methamphetamine during the pendency of the case and admitted to using the drug. A licensed chemical dependency counselor testified E.G. has a substance abuse problem, and E.G. acknowledged she is "an addict." The record also shows E.G. was arrested in May 2015 but she failed to report the arrest. The trial court could have determined her inability to remain sober negatively impacted her ability to care for her children. This evidence weighs in favor of the trial court's finding that termination of E.G.'s parental rights to her children was in the best interest of each child. *See In re J.O.A.,* 283 S.W.3d 336, 346 (Tex. 2009) (a trial court may consider a parent's history of drug use and irresponsible choices when making a determination to terminate a parent's rights to her children).

6

E.G. also acknowledged her poor decisions with regard to her romantic relationships. She admitted K.M. had called five different men "dad" during his lifetime. She further acknowledged she did not inquire into the criminal history of any of the men she dated. She testified her first boyfriend was physically abusive and that K.M.'s father had been verbally abusive to her. She also testified she was afraid of I.D.'s father and stated she knew before she became pregnant with I.D. that the father had been in prison for murder. She also told the court K.M. witnessed her physical fight with D.G.'s father. The man grabbed her "by my throat and slammed me on the ground, during which time my arm was burnt on the wall heater." She was newly pregnant with D.G. at that time, but may not have known she was pregnant. E.G.'s past behavior in relationships, leading to unstable circumstances wholly inconsistent with effective child-rearing, weighs in favor of the trial court's best-interest finding.

The court heard other evidence bearing unfavorably on E.G.'s parenting abilities. As noted, in 2014, two of the children, I.D. and D.G., tested positive for methamphetamine in their systems. The record also shows all three children exhibited behavioral and developmental problems, particularly the two older children. K.M. exhibited "hoarding" behavior with food and belongings and was "parentified," characteristics a counselor testified were indicators of neglect. E.G. admitted to a Department employee that K.M. had not learned to clean himself after using the bathroom and was unable to tie his shoes. Both K.M. and I.D. were diagnosed with "attention deficit disorder combined type and adjustment disorder with mixed disturbance of emotions and conduct." I.D. was delayed in "psychological functioning,

behavioral functioning, social functioning, [and] educational functioning," with skills closer to those of a two- or three-year-old.

By the time of the final hearing, K.M. was living in a residential treatment facility. The Department was evaluating his potential placement with a paternal uncle. E.G. testified she had "noticed a change" in K.M. during his residence in the facility, agreed it was a "positive" change, and said he should remain there until he was ready to be discharged. I.D. was living in a foster home. At the time of the hearing, the Department was investigating the failed home study of I.D.'s grandparents, which apparently failed only for medical reasons. I.D. was receiving speech therapy and attending pre-kindergarten. I.D.'s father testified at the hearing. He testified he never saw E.G. smoke methamphetamine and she never told him she did. The ad litem for the children told the court K.M. and I.D. desired to continue to see their mother.[4]

Although D.G. was too young at the time of the final hearing to express her desires, the trial court could have inferred those desires from the evidence presented at the hearing. *In re S.R.,* 452 S.W.3d 351, 369 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). D.G. was living with foster parents where she had lived from the age of eight weeks. The foster parents testified at the hearing, telling the court they had been married for ten years, were educated, employed, and had two biological children, aged six and eight years. All three children were attending programs at a Christian school. The foster mother testified D.G. had initially been "stiff and inflexible" but had overcome

---

[4] The ad litem explained to the court that both boys "expressed a desire to continue contact with their mom" and "while they understand that they are not in a position where they could go home, they do want contact with their mother." The boys' counselor told the court that neither boy mentioned their biological families and when K.M. talked about family, he talked only about the foster families with whom he had lived.

those issues. Both foster parents testified they wish to adopt D.G. and that D.G. considered them to be her parents. A doctor testified it was in D.G.'s best interest that the foster parents adopt D.G. The foster father testified they had a cordial relationship with E.G. and did not oppose continued contact between D.G. and E.G.

The trial court could have taken the evidence of the needs of each child and the manner in which those needs were being met as significant evidence that termination of E.G.'s parental rights was in the best interest of each of the three.

As her appellate brief emphasizes, the record contains some evidence weighing against the trial court's best-interest finding. However, evidence cannot be read in isolation; it must be read in the context of the entire record. *In the Interest of K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *45 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.). The record shows E.G. loves her children and her visits with the children went well. D.G.'s foster mother testified she "absolutely" believes E.G. loves D.G. E.G. admitted to her mistakes with them, reiterated her sobriety, and testified her children tell her they want to come home "all the time." By the time of the final hearing, E.G. had secured a suitable home and a vehicle and had been employed for six months. E.G. also completed a psychological evaluation, attended five parenting classes and completed two weeks of homework. But she failed to complete her remaining services under the court-ordered service plan. She provided no detailed plans for caring for her children in the event of their return to her care.

The children's ad litem told the court termination was in their best interest, and has filed a brief in this court urging affirmance of the court's judgment.

9

After viewing all of the evidence in the light most favorable to the finding, we conclude that the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of the parent-child relationship between E.G. and her children was in the children's best interest. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding or was not so significant as to preclude the trial court from forming a firm belief or conviction that termination was in their best interest. Thus, we find that the evidence was legally and factually sufficient to support the best interest finding.

We resolve E.G.'s appellate issue against her and affirm the judgment of the trial court.


James T. Campbell
Justice