

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00425-CV

In the Interest of **J.J.O.**, a Child

From the 438th Judicial District Court, Bexar County, Texas
Trial Court No. 2017-PA-00377
The Honorable Todd Alexander Blomerth, Judge Presiding

Opinion by:  Karen Angelini, Justice

Sitting:  Karen Angelini, Justice
Rebeca C. Martinez, Justice
Irene Rios, Justice

Delivered and Filed:  October 31, 2018

AFFIRMED

This is an appeal from a final order terminating Jeremy's[1] parental rights to his fourteen-month-old child, J.J.O. We affirm.

### BACKGROUND

The Department of Family and Protective Services filed a petition to terminate Jeremy's parental rights. At a bench trial, a Department caseworker testified in person, and Jeremy, who was in prison, testified by telephone. After the trial, the trial court signed an order terminating Jeremy's parental rights based on paragraphs (N) (constructive abandonment), (O) (failure to comply with a court-ordered service plan), and (Q) (engaging in criminal conduct) of section

---

[1] We refer to the parent by a fictitious name to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8.

161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (N), (O), (Q). The trial court also found that termination was in the child's best interest. *See id*. § 161.001(b)(2).

### DISCUSSION

In a single issue, Jeremy argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights was in the child's best interest. We review the legal and factual sufficiency of the evidence to support a best interest finding under the standards enunciated in *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009).

Under Texas law, there is a strong presumption that the best interest of a child is served by keeping the child with a parent. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). In considering the child's best interest, a factfinder may consider the nonexclusive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). Further, section 263.307(b) of the Family Code lists factors to be considered in determining whether the parent is willing and able to provide the child with a safe environment. *See* TEX. FAM. CODE ANN. § 263.307(b). Proof of acts or omissions under section 161.001(b)(1) may also be probative of the child's best interest. *In re C.H.*, 89 S.W.3d at 28. A best interest analysis may consider direct and circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). And, a factfinder may judge a parent's future conduct by his past conduct. *Id*.

Here, in looking at all the evidence in the light most favorable to the trial court's finding, we conclude the trial court could have reasonably formed a firm belief or conviction that termination of Jeremy's parental rights was in the child's best interest. *See In re J.O.A.*, 283 S.W.3d at 344-45.

The evidence showed that the Department became involved in this case shortly before the child's birth. At birth, the child tested positive for drugs and syphilis. Immediately upon his discharge from the hospital, the child was placed with a foster family.

Jeremy had been involved in an "off and on" relationship with the child's biological mother for about a year. Jeremy knew the child's biological mother was using drugs while she was pregnant with the child. In his trial testimony, Jeremy claimed he had told the child's mother that she needed to stop using drugs, but she did not listen to him. Jeremy did not take any other action in response to the mother's drug use.

After the child was born, the caseworker prepared a service plan for Jeremy and explained it to him while visiting him at the Bexar County jail. Jeremy signed the service plan and agreed to work on the services that were available to him while he was incarcerated. However, by the time of trial, Jeremy had not completed all the services in the service plan. According to the caseworker, Jeremy had completed drug treatment, but he was still lacking parenting classes, individual counseling, and psychosocial services. Jeremy, who had been in prison since before the child was born, never visited the child.

Jeremy had a significant criminal history. In 2017, Jeremy was charged with eight different theft charges. In 2018, another theft charge was filed against Jeremy. Jeremy had completed a one-year sentence in state jail. Additionally, Jeremy was currently serving a two-year prison sentence for some of the theft charges. Furthermore, prior to 2015, Jeremy had been arrested twice on other types of charges. A parent's criminal activities and history are relevant to a best interest analysis. *In re M.L.C.*, No. 04-17-00459-CV, 2017 WL 6597828, at *5 (Tex. App.—San Antonio Dec. 27, 2017, pet. denied). Criminal conduct, prior convictions, and incarceration affects a parent's life and his ability to parent, thereby subjecting his child to potential emotional and physical danger. *Id*.

Jeremy also had a history of drug use. Jeremy testified that he wished he had participated in drug treatment before he went to prison, suggesting that if he had obtained drug treatment sooner he probably would not have engaged in criminal conduct. Additionally, Jeremy admitted that he had engaged in drug use and criminal conduct, despite having six other children between the ages of six and twenty-four. *See In re E.D.*, 419 S.W.3d at 620 (noting a factfinder in a parental termination case may judge a parent's future conduct by his past conduct). Jeremy acknowledged that he could not care for this child while he was incarcerated. He further acknowledged that this was not a reasonable plan for the care of the child.

The caseworker believed that Jeremy could not meet the child's emotional and physical needs, noting that Jeremy was still incarcerated, did not have a bond with the child, and had never provided any financial support for the child. The caseworker believed Jeremy would not be able to provide for the child's basic needs because Jeremy did not have a stable living environment and he was not employed. According to the caseworker, Jeremy's projected prison release date was February 8, 2019. Finally, the child's foster family was intending to adopt the child if possible. We conclude the evidence is legally sufficient to support the trial court's best interest finding.

In reviewing termination findings for factual sufficiency of the evidence, we consider and weigh all the evidence, including disputed evidence. *In re J.O.A.*, 283 S.W.3d at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. Some of the evidence in this case was disputed. First, Jeremy testified that his projected prison release date was February 9, 2019, but he believed he would be released from prison earlier, on September 18, 2018. On cross-examination, however, Jeremy admitted the early release date was pure speculation. Second, Jeremy suggested that he could provide the child with a safe and stable environment at some point

in the future. Jeremy testified that he had worked as a technician and an auto mechanic in the past, earning between $20,000 and $30,000 a year, and that his mother had lived in the same house for forty-two years. Finally, Jeremy testified that, days before trial, he had completed several additional classes, a parenting class, another drug treatment class, and a program called CHANGES, which helps prisoners prepare for their release. Jeremy indicated the reason he did not complete the counseling and psychosocial assessment in the service plan was because these services were not available in prison. However, even if Jeremy had substantially complied with his service plan, it would not preclude a finding that termination was in the child's best interest. *In re A.C.B.*, 198 S.W.3d 294, 297-98 (Tex. App.—Amarillo 2006, no pet.) (rejecting parent's argument that substantial compliance with her service plan precluded termination of her parental rights). In considering the entire record, including the disputed evidence, we conclude the evidence is factually sufficient to support the trial court's finding that termination of Jeremy's parental rights was in the child's best interest. *See In re J.O.A.*, 283 S.W.3d at 345.

We, therefore, affirm the trial court's order terminating Jeremy's parental rights.

Karen Angelini, Justice