

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00296-CV

---

IN THE INTEREST OF K.A.A., A CHILD

---

On Appeal from the 31st District Court
Lipscomb County, Texas
Trial Court No. 20-05-4835, Honorable Jack Graham, Presiding

---

April 20, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant A.H. (Mother) appeals the trial court's final order terminating her parental rights to K.A.A.[1]  Appellee is the Texas Department of Family and Protective Services. Through a single issue, Mother complains that the evidence is legally and factually insufficient to support the trial court's finding that termination of her parental rights was in the best interest of K.A.A.  Concluding legally and factually sufficient evidence supports the trial court's best interest finding, we overrule Mother's issue and affirm the final order.

---

[1] To protect K.A.A.'s privacy, we will refer to A.H. as "Mother," and the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  The parental rights of K.A.A.'s father, J.A., were terminated in the same proceeding but he did not appeal the final order.

Background

Final hearing evidence showed Mother has a history of methamphetamine use. At trial, she acknowledged having a methamphetamine addiction. Mother further admitted that her two older children live with their father because she is having "methamphetamine addiction issues." Her struggles were corroborated by Department caseworker, Hailey Grisham, who testified that Mother has had other children removed. According to the family service plan in evidence, Mother successfully completed a long-term rehab program in July 2019.

K.A.A. was born in July 2019. Mother admitted using methamphetamine while pregnant with K.A.A. Mother's subsequent allegedly neglectful supervision resulted in K.A.A.'s May 2020 removal, and the Department's appointment as the child's temporary managing conservator. During the Department's investigation preceding removal, K.A.A. tested positive for methamphetamine although Mother did not. It was Mother's belief K.A.A. was exposed to methamphetamine while in the care of a paternal aunt.

In August 2020, K.A.A. was placed with a foster family, where she remained at the time of final hearing. According to Grisham's testimony, the foster family has two adopted children and is willing to adopt K.A.A. Grisham described K.A.A. as "very close" to the family's other children, and noted the foster family home is a stable, safe place where K.A.A. is not exposed to methamphetamine use.

Following K.A.A.'s removal, mother lived with her boyfriend, B.H. He tested positive for methamphetamine in February 2021. Mother determined that remaining in a relationship with B.H. would negatively affect her sobriety effort. Grisham testified she

was aware Mother remained in contact with B.H. but had the "understanding" they had not resumed their relationship. Nevertheless, near the close of evidence at the final hearing conducted over Zoom, Mother acknowledged she was appearing for court from B.H.'s house.

The trial court ordered Mother complete specified services as a condition for regaining possession of K.A.A. According to Grisham, Mother initially made a "great effort" to fulfill the service plan. Mother completed rational behavior training and a psychosocial evaluation and maintained contact with the Department. Mother did not, however, complete other requirements, viz.: maintaining employment, completing counseling services, completing a substance abuse program, maintaining a drug-free lifestyle, and completing an "OSAR [Outreach, Screening, Assessment, and Referral] assessment." It also appears that Mother attended as many as forty Narcotics Anonymous meetings between June 2 and October 6, 2021.

Although Mother initially visited K.A.A. on a consistent basis, the visits "dropped off" during the last month before final hearing. At time of trial, Grisham observed that Mother was a no-show for three of the last four scheduled visits with the child, "with no call, or anything, to let us know what's happening."

Mother tested positive for methamphetamine in February, May, and July 2021. She admitted also using the drug multiple times in August 2021. Mother testified of having once considered a one-year, inpatient treatment program should she regain possession of K.A.A., but added she believed such a program was not necessary in light of her other efforts to obtain sobriety.

3

Grisham answered in the affirmative to the trial court's questions of whether Mother (1) "knowingly placed the child in conditions or surroundings which endangered the child's physical or emotional well-being"[2] and (2) "engaged in conduct, or knowingly placed the child with persons who engaged in conduct, which endangered the physical and emotional well-being of the child."[3]

For employment, Mother said she cleans four houses once a week and sometimes babysits. She further testified of submitting job applications for part-time work at a liquor store and a business identified only as "Burt's." There was no evidence documenting Mother's income and expenses. Mother testified she rents a house in Spearman, Texas, but at the time of final hearing was staying with a supportive friend to maintain her "mental health and [] sobriety." Mother testified that if custody of K.A.A. is restored to her, she would seek childcare through two supportive friends, with later care provided at a facility in Perryton, Texas.

On October 18, 2021, the trial court signed a final order terminating Mother's parental rights to K.A.A. after making findings under Family Code section 161.001(b)(1), predicate grounds (D), (E), and (O), and that termination was in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (O) and (2).

---

[2] Tracking TEX. FAM. CODE ANN. § 161.001(b)(1)(D).

[3] Tracking TEX. FAM. CODE ANN. § 161.001(b)(1)(E).

Analysis

Mother does not challenge the evidence supporting the predicate grounds for terminating her parental rights to K.A.A. As noted, her complaint is with the sufficiency of evidence supporting the trial court's best interest finding.

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). The applicable standards for reviewing the evidence are discussed in our opinion in *In re A.M.*, No. 07-21-00052-CV, 2021 Tex. App. LEXIS 5447 (Tex. App.—Amarillo July 8, 2021, pet. denied) (mem. op.).

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976).[4] While the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[5] "The absence of evidence about some of these considerations would not preclude a fact-finder from

---

[4] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[5] *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent.").

5

reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

There is a strong presumption that keeping a child with a parent is in the child's best interest. *In re R.R.*, 209 S.W.3d at 116. But prompt and permanent placement of a child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a). The best interest analysis evaluates the best interest of the child, not the parent. *In re A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.); *see In re M.G.D.,* 108 S.W.3d 508, 515 (Tex. App.—Houston [14th Dist.] 2003, pet. denied) (noting "the Legislature made clear that courts cannot leave children in foster homes indefinitely while existing parents try to improve themselves and their conditions."). Unchallenged predicate findings, here including endangering grounds (D) and (E), can support the best interest finding. *In re E.A.F.,* 424 S.W.3d 742, 750 (Tex. App.—Houston [14th Dist.] 2014, pet denied). "A parent's drug use, inability to provide a stable home, and failure to comply with a family service plan support a finding that termination is in the best interest of the child." *In re M.R.,* 243 S.W.3d 807, 821 (Tex. App.—Fort Worth 2007, no pet.).

At trial, Mother agreed she was addicted to methamphetamine and that "the big issue in this case [was her] methamphetamine use." Undisputed evidence demonstrates this addiction predated K.A.A.'s birth and has stripped her of a relationship with two other

6

children.  Through Mother's prenatal consumption, it endangered K.A.A. before birth.  And through Mother's placement of K.A.A. with a user-relative, it precipitated K.A.A.'s removal.  Methamphetamine's allure tarnished Mother's promising start on her family service plan and sent her seeking stress relief through intoxication.  Inferentially, it factored into a relationship with a paramour-user, evicted her from her own home, and restricted her wage-earning capacity.  While Mother completed some services, sought additional counseling sessions, attended Narcotics Anonymous meetings, left home for the aid-in-crisis of a friend, may have separated from her paramour for sobriety's sake, and at least had a source of income, she could not overcome the vagaries of addiction.  Mother's susceptibility to relapse was illustrated in February, when B.H. also tested positive, and in August after receiving stressful and unpleasant news.

On numerous occasions, Mother was presented an opportunity to choose between family and addiction.  Just as she did with her other children, Mother chose methamphetamine.  She even did so after K.A.A.'s removal and with knowledge that termination of her parental rights might be a consequence.  As we have held in other cases involving parental drug addictions, past conduct is often prologue.  *In re A.M.,* Nos. 07-18-00047-CV, 07-18-00048-CV, 2018 Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam, mem. op.) (cleaned up).

K.A.A. has spent most of her life in the care of foster parents who are willing to pursue adoption.  By contrast, Mother's time with child has been sporadic.  The foster family's home was described as safe and stable and an environment where K.A.A. is not exposed to methamphetamine.  K.A.A is close to her foster parents' other children.  Within

7

this environment, K.A.A. has been assessed as developmentally on target and "above average in many areas[.]"

K.A.A. requires a stable, supportive home free of illegal drugs. Contrary to the conclusory statement of the family service plan that Mother's parenting skills were appropriate, the trial court was within its power to disagree that Mother could effectively nurture and safely care for the child, particularly when the evidence suggests Mother cannot ensure a secure, drug-free home.

We conclude the evidence is legally and factually sufficient to establish a firm conviction in the mind of the trial court that termination of Mother's parental rights is in the best interest of K.A.A. Mother's sole issue is overruled.

## Conclusion

Having found the evidence sufficiently supports the trial court's best interest finding, we affirm its final order.

Lawrence M. Doss
Justice
