

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-14-00392-CV
_____

IN THE INTEREST OF R.M. AND A.M, CHILDREN

On Appeal from the 64th District Court
Hale County, Texas
Trial Court No. A35990-0804, Honorable Edward Lee Self, Presiding

March 18, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

This is an appeal from the trial court's order terminating the parental rights of appellant, R.E., to her children, R.M. and A.M.[1]  Appellant challenges the order, contending the evidence presented at the final hearing was insufficient to prove the grounds set forth in section 161.001(1)(D) or 161.001(1)(E) of the Family Code or that termination was in the best interests of her children.  We will affirm the order of the trial court.

---

[1] To protect the children's privacy, we will refer to appellant and the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2011); TEX. R. APP. P. 9.8(b).

R.M. and A.M. are the female children of appellant and P.M. The father, P.M., died in 2009. By the time of the final hearing, R.M. was seven years old and in second grade; A.M. was five years old and in kindergarten.

Over the span of several years, the Texas Department of Family & Protective Services initiated a number of investigations concerning appellant and the care of her children. In April 2013, the Department filed pleadings with the trial court. The record shows R.M. and A.M. were removed from appellant's care because of the Department's concerns over appellant's alcohol use, her living arrangements and questionable conduct including aggressive and volatile outbursts.

A final hearing on the termination of appellant's parental rights was held in October 2014. Appellant testified on her own behalf. Department caseworkers, licensed counselors, appellant's partner and several family members also testified. The trial court entered an order terminating appellant's parental rights to R.M. and A.M., finding clear and convincing evidence showed appellant "knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endanger the physical or emotional wellbeing of the children, pursuant to § 161.001(1)(D), Texas Family Code and engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangers the physical or emotional well-being of the children, pursuant to § 161.001(1)(E), Texas Family Code." The trial court further found termination of appellant's parental rights was in the children's best interests. This appeal followed.

Analysis

Standard of Review in Termination Cases

The natural right existing between parents and their children is of constitutional dimension. *Santosky v. Kramer,* 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). Clear and convincing evidence is that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established. TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re C.H.,* 89 S.W.3d at 25-26.

In applying the clear and convincing standard under our legal sufficiency standard, we review the evidence by considering all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true*. In re E.N.C.,* 384 S.W.3d at 802 (*citing In re J.F.C.,* 96 S.W.3d at 266). To give appropriate deference to the factfinder's conclusions, we must assume the factfinder resolved disputed facts in favor

3

of its finding if a reasonable factfinder could do so. *In re E.N.C.,* 384 S.W.3d at 802. As a corollary to this requirement, an appellate court should also disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.*

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder could reasonably have found to be clear and convincing. *In re C.H.,* 89 S.W.3d at 25. We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* In doing so we consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

The Family Code permits a trial court to terminate parental rights if the Department proves by clear and convincing evidence that the parent committed an action prohibited under section 161.001(1) and termination is in the child's best interests. TEX. FAM. CODE ANN. § 161.001(1), (2) (West 2014); *Holley v. Adams,* 544 S.W.2d 367, 370 (Tex. 1976).

4

Only one predicate finding under section 161.001(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interests. *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.). Therefore, we will affirm the termination order if the evidence is both legally and factually sufficient to support any statutory ground on which the trial court relied in terminating parental rights as well as the best interest finding. *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

Ground for Termination - Section 161.001(1)(E)

Parental rights may be terminated under paragraph (E) of section 161.001(1) if there is clear and convincing evidence that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. The cause of the danger to the child must be the parent's conduct alone, and may be proven by the parent's actions as well as by the parent's omissions or failures to act. *Doyle v. Texas Dep't of Protective & Regulatory Servs.,* 16 S.W.3d 390, 395 (Tex. App.—El Paso 2000, pet. denied). Additionally, paragraph (E) requires more than a single act or omission; a voluntary, deliberate and conscious course of conduct by the parent is required. *In re D.T.,* 34 S.W.3d 625, 634 (Tex. App.—Fort Worth 2000, pet. denied). "Endanger" means to expose to loss or injury; to jeopardize. *In re M.C.,* 917 S.W.2d 268, 269 (Tex. 1996), (*citing Texas Dep't of Human Services v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987)). It is more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, but it is not necessary that the conduct be directed at the child or that the child actually suffer injury. *In re M.C.,* 917 S.W.2d at 269.

5

Application

Proof of Endangering Conduct

The record contains several instances of conduct by appellant that endangered the physical or emotional well-being of her children.

First, the appellate record shows multiple Department investigations regarding appellant's alcohol use from 2007 to 2013. During a February 2013 home visit, appellant reported to a caseworker that she drank alcohol to cope with her stress and R.M. sometimes asked her to "please stop drinking mama." The children also reported to their counselor they were "scared" when they thought appellant was drinking. For this reason, the girls' counselor recommended appellant's visits with her children be supervised. In April 2013, appellant told a caseworker her family pressured her to drink on Easter and she drank until she became sick. This was a violation of the safety plan she signed. Appellant's counselor testified appellant's "alcoholism was -- the alcohol abuse she had had in the past was a big concern for me as well." The trial court could have seen appellant's abuse of alcohol as conduct endangering to her daughters. *See In the Interest of K.C.F.,* No. 01-13-01078-CV, 2014 Tex. App. LEXIS 6131, at *26 (Tex. App.—Houston [1st Dist.] June 5, 2014, no pet.) (mem. op.) (collecting cases).

Second, the trial court could have determined appellant jeopardized her daughters by moving into a home with two men she did not know well, one of whom was a registered sex offender.[2] At the time the children were removed from her

---

[2] The record shows his convictions included indecency with a child. It is undisputed appellant did not know of the man's sex offender status when she moved into the home, but her lack of knowledge

6

custody, appellant lived with her partner, M.V., and these two men. The children, although living primarily with one of appellant's sisters and her husband,[3] also lived with appellant for a period of time. Appellant's counselor testified he engaged in cognitive behavioral therapy with appellant, part of which involved making appellant aware of the dangers to her children from situations like living with men she did not know. Testimony showed appellant was "irate" when Department employees spoke with her about living with these men.

Third, the record shows appellant exhibited some aggressive behavior the trial court could have concluded endangered her children. *See In re J.I.T.P.,* 99 S.W.3d 841, 845 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (parent's abusive or violent conduct can produce a home environment that endangers child's well-being). Appellant's counselor opined that at the conclusion of counseling, appellant ". . . was not ready at that time to be reunited with the children" because she still needed "parenting skills" and more work on her "anger management." Evidence showed appellant engaged in aggressive behavior, including arguments that occurred when appellant went to her sister's home where her children were staying. The record also shows a January 2013 allegation of domestic violence between appellant and M.V. in front of the children. R.M. stated these fights made "her feel broken in her heart." There was also evidence of "continued reports of domestic violence within the past four and a half, four months," leading the Department to believe appellant failed to learn from

_____

does not diminish the jeopardy to her children. Testimony showed appellant met the other man on the side of the road when he helped her with car trouble. Appellant testified she had "forgotten" she used to work with this man.

[3] Appellant had allowed R.M. and A.M. to live with one of her sisters and her husband for quite some time. After a home study was conducted, the children were placed with another of appellant's sisters and her husband in June 2013.

the service plan. Both appellant and M.V. denied they engaged in domestic violence, but the women admitted to fights with other family members, including appellant's brother. *See In re M.C.*, 917 S.W.2d at 269 (endangering conduct not necessarily directed at the child); *see also In the Interest of J.I.T.P.*, 99 S.W.3d at 845 (domestic violence, want of self-control, and propensity for violence may be considered as evidence of endangerment) (citations omitted). The trial court could have taken such evidence as proof of appellant's inability to control her anger even with family members and that such conduct endangered her children.

Evidence showed even after appellant completed the services in her plan, she exhibited volatile behavior, including what a caseworker termed "a lot of paranoia, a lot of anger." The caseworker also described a phone conversation with appellant in which she "seemingly out of nowhere, said, 'The eyes, the eyes, I will rip them out.'" The girls' counselor voiced concern over appellant's behavior during family sessions, observing "mood shifts" during which appellant alternated between a cooperative attitude and anger. The counselor "couldn't see a reason as to why…she had become so angry." There was evidence appellant left messages for caseworkers sounding "very intoxicated." Recordings of twelve calls were admitted, with testimony characterizing appellant's mental state in the calls as "extremely agitated, extremely repetitive, at times slurring words to the point I cannot understand." Appellant sometimes sounded "manic" and other days, "would be very, very slow, slurring her words." Evidence also showed threatening and inappropriate comments on appellant's Facebook page, one directed at a Department caseworker by name. This evidence well could have bolstered in the trial court's mind a conclusion appellant's angry behavior was endangering to her children.

8

*See In re J.I.T.P.,* 99 S.W.3d at 845 (a parent's mental state may be considered in determining whether a child is endangered if that mental state allows the parent to engage in conduct that jeopardizes the physical or emotional well-being of the child).

The record does show some evidence contrary to the trial court's finding. Appellant testified she had completed the items in her service plan, stating, "I've done everything" and a caseworker testified to appellant's completion of her plan. M.V. also completed services with appellant and went to counseling with her. The girls' counselor had two positive family sessions with appellant, her partner and the girls. The counselor testified, "It was very respectful. [Appellant] was -- she interacted very well with the children. I didn't really have too many concerns from the family therapy." Also, appellant told the court she was prescribed pain medication after knee surgery and the dosage was too strong. She attributed the allegedly intoxicated or threatening phone calls to the influence of the medication.

We conclude that the evidence, viewed in the light most favorable to a finding of endangerment, was sufficiently clear and convincing that a reasonable factfinder could have formed a firm belief or conviction appellant engaged in conduct that endangered the children's physical or emotional welfare. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's endangerment determination or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that appellant engaged in conduct that endangered the children's physical or emotional welfare. Accordingly, we find the evidence was legally and factually sufficient to support the subsection (E) endangerment finding with respect to the termination of appellant's parental rights to her

two children.[4]  *See* TEX. FAM. CODE ANN. § 161.001(1)(E).  We overrule appellant's first issue.

Proof of Best Interests

There is a strong presumption that keeping a child with a parent is in the child's best interests. *In re R.R.,* 209 S.W.3d 112,116 (Tex. 2006).  Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interests.  TEX. FAM. CODE ANN. § 263.307(a) (West 2008).  The best interests analysis evaluates the best interests of the child, not that of the parent. *In the Interest of A.C.B.,* 198 S.W.3d 294, 298 (Tex. App.—Amarillo 2006, no pet.).

The following factors may be considered in determining the best interests of the child:  (A) the desires of the child; (B) the emotional and physical needs of the child now and in the future; (C) the emotional and physical danger to the child now and in the future; (D) the parental abilities of the individuals seeking custody; (E) the programs available to assist these individuals to promote the best interests of the child; (F) the plans for the child by these individuals or by the agency seeking custody; (G) the stability of the home or proposed placement; (H) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (I) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d at 371-72.

---

[4] Having determined the record contains evidence sufficient to sustain the subsection (E) ground, we need not address the evidence supporting the subsection (D) ground also found by the court.

The *Holley* factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate. *In re C.H.,* 89 S.W.3d at 27. Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child. *Id.* On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interests of the children warrants termination of the parent-child relationship. *In re C.H., 89 S.W.3d at 28.*

Here, the desires of the children support termination of appellant's parental rights. Their counselor testified the girls told her on several occasions they did not want to go home, did not want to go home if mom was drinking, and liked living with their aunt. The girls also mentioned appellant fighting with their aunt and appellant's use of "bad words."[5]

Appellant has not shown stability in her life, another factor weighing in support of termination. Evidence showed she is unemployed, does not have a driver's license, moves frequently, has exhibited questionable judgment with regard to her living arrangements and her conduct to family and others, and has exhibited behavior consistent with prescription drug and alcohol abuse. Appellant's counselor testified his treatment with appellant included "trying to help her budget her money and become

---

[5] During one session with their counselor, however, the girls told the counselor they liked going to appellant's home and wanted to go home. Also, pictures taken during an unsupervised visit with appellant showed the girls appeared happy and "smiling."

financially stable, which would include housing and the ability to provide for [her] children." But the same counselor told the court appellant was not ready to be reunited with her children, even after counseling.

With respect to the stability of the children's current placement with their aunt and uncle and the Department's plans for the children, the evidence supported termination. While the counselor testified she was concerned that the girls were being coached to look for alcohol in appellant's home, and this concern was shared by the Department, the caseworker nevertheless recommended adoption by the girls' aunt and uncle. The children were in "a loving and caring home environment" and had a "stable homelife." The aunt and uncle testified to their willingness and ability to adopt the girls and to their financial ability to care for them. Neither child had any problems at school.

The court could have seen some of appellant's statements as a failure to take responsibility for her actions and minimizing their effects on her children. She admitted past alcohol abuse, taking prescription drugs, and fighting with family members. But, she denied current alcohol abuse and told the court the Department never tested her for it. As noted, she attributed unusual behavior to mis-prescribed pain medication. She also denied the behavioral volatility the caseworker and the counselor described, further denying the threatening and inappropriate comments on her Facebook page were hers, and telling the court her account was "hacked."

There is some evidence of appellant's ability to parent her children. At the time of the final hearing, appellant had a home that was adequate for the children and had completed all services in her plan. But, the record shows appellant tended to move

frequently and failed to maintain contact with the Department. So, while her current home may be adequate, the court could have found from the evidence presented that this situation could easily change if she regained responsibility for her children. Caseworkers told the court they did not feel appellant had learned from her services and from the evidence before it, the trial court could have drawn the same conclusion.

Appellant also correctly points out that some additional evidence exists in the record that if believed, weighs against the trial court's finding that the current placement is appropriate. Appellant says the girls' aunt was "arrested" for not having proper car seats for the children and that appellant had complained about the lack of car seats to the Department. The aunt testified she was not arrested but only stopped for speeding. Also, appellant testified the aunt "lost" one of the girls in Walmart for a period of time. But, the aunt explained this incident to the court, stating it was a miscommunication and the child was out of her view for around 20 minutes. Lastly, appellant testified she complained to the Department several times that the girls had lice for a long period of time while in the care of their aunt and uncle. She introduced a photograph at the final hearing that she testified showed the lice infestation. The uncle with whom the girls are currently placed testified the children were treated for lice. Even if the trial court accepted the evidence to which appellant points, we find it not so significant as to preclude a finding that termination was in the best interests of the children.

Given the evidence before it, the trial court could have agreed with the caseworker that termination of appellant's parental rights was in the best interests of R.M. and A.M., particularly in light of the girls' counselor's testimony that she could not recommend their reunification with their mother.

After viewing all of the evidence in the light most favorable to the best interests finding, we conclude the evidence was sufficiently clear and convincing that a reasonable fact finder could have formed a firm belief or conviction that termination of the parent-child relationship between appellant and her children was in the children's best interests. We further conclude that, viewed in light of the entire record, any disputed evidence could have been reconciled in favor of the trial court's finding that termination of the parent-child relationship between appellant and the children was in the children's best interests or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in their best interests. Thus, the evidence was legally and factually sufficient to support the trial court's best interests finding. We overrule appellant's second issue.

## Conclusion

Having resolved each of appellant's issues against her, we affirm the order of the trial court.

James T. Campbell
Justice

14