

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-23-00126-CV

**IN THE INTEREST OF O.J.C.** and C.C., Children

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA00207
Honorable Kimberly Burley, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:       Luz Elena D. Chapa, Justice
               Irene Rios, Justice
               Beth Watkins, Justice

Delivered and Filed: August 9, 2023

AFFIRMED

Appellant C.M.C. appeals the trial court's order terminating her parental rights to her children, O.J.C. and C.C.[1]  She argues the evidence is legally and factually insufficient to support the trial court's best interest finding.  We affirm the trial court's order.

### BACKGROUND

The Texas Department of Family and Protective Services ("the Department") initiated emergency removal proceedings to remove O.J.C. and C.C. from C.M.C.'s care after she and C.C tested positive for amphetamines when C.C. was born.  The Department sought temporary managing conservatorship of the children and termination of C.M.C.'s parental rights.  The trial

---

[1] To protect the identity of the minor children in this appeal, we refer to the parent and children by their initials. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

court signed an emergency removal order naming the Department temporary sole managing conservator of the children. The Department placed the children with C.C.'s paternal grandmother and created a service plan for C.M.C. The service plan required C.M.C. to provide proof of a stable home and employment, complete parenting classes, comply with a visitation plan, complete a substance abuse program and submit to random drug testing after completion of the program, complete a psychological evaluation, attend individual counseling, and refrain from criminal activity, including associating with inappropriate individuals. Following an adversarial hearing, the trial court ordered C.M.C. to comply with the Department's service plan; however, C.M.C. continued to use illegal drugs, causing the Department to pursue termination of her parental rights.

The trial court held a one-day bench trial and heard testimony from C.M.C.'s therapist, the Department removal worker's supervisor, the Department caseworker, and C.C.'s paternal grandmother. The Department also admitted several exhibits into evidence, including a copy of an order from a status hearing and C.M.C.'s service plan. Ultimately, the trial court ordered termination of C.M.C.'s parental rights based on statutory grounds (O) and (P) in subsection 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE §§ 161.001(b)(1)(O) (failure to comply with court-ordered service plan) and (P) (failure to complete court-ordered substance abuse program or after completion, continued to abuse controlled substance). It further found termination is in the children's best interest. *See id*. § 161.001(b)(2). C.M.C. now challenges the legal and factual sufficiency of the trial court's best interest finding.

## STANDARD OF REVIEW

A judgment terminating parental rights pursuant to section 161.001 of the Texas Family Code must be supported by clear and convincing evidence of one of the predicate grounds enumerated in subsection (b)(1) and a best interest finding. *See id*. § 161.001(b). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief

or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007. To determine whether this heightened burden of proof was met, we use a heightened standard of review to determine whether a "factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002); *see, e.g.*, *In re O.N.H.*, 401 S.W.3d 681, 683 (Tex. App.—San Antonio 2013, no pet.). "This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role." *O.N.H.*, 401 S.W.3d at 683.

A legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)) (internal quotation marks omitted). We assume "the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). But, we may not disregard undisputed evidence even if it does not support the trial court's finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence. *Id*. (citing *J.F.C.*, 96 S.W.3d at 266). A factual sufficiency review requires us to consider disputed or conflicting evidence. *Id*. at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*. (quoting *J.F.C.*, 96 S.W.3d at 266) (internal quotation marks omitted). Under these standards, the factfinder is the sole judge of the weight and credibility of the evidence. *See id*. at 346; *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam).

## BEST INTEREST

### *Applicable Law*

When conducting a best interest determination, we presume preservation of the parent-child relationship as well as the prompt and permanent placement of a child in a safe environment is in the child's best interest. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006); TEX. FAM. CODE § 263.307(a). In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in section 263.307(b) of the Texas Family Code.[2] *See id.* We also consider the non-exhaustive factors, known as the *Holley* factors, promulgated by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).[3] The list is not exhaustive, and not every factor must be proved to find termination is in the child's best interest. *C.H.*, 89 S.W.3d at 27. Nevertheless, evidence of only one factor may be sufficient for a factfinder to form a reasonable belief or conviction termination is in a child's best interest, especially when undisputed evidence shows the parental relationship endangered the child's safety. *Id.* "Evidence that the parent has committed the acts or omissions prescribed by section 161.001 may also be probative in determining the child's best interest; but the mere fact that an

---

[2] These factors include: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child or the child's parents; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills; and (13) whether an adequate social support system is available to the child. *See id.*

[3] These factors are (1) the desires of the child; (2) the present and future emotional and physical needs of the child; (3) the present and future physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans held by the individuals seeking custody; (7) the stability of the home of the parent and the individuals seeking custody; (8) the acts or omissions of the parent may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *See id.*

act or omission occurred in the past does not ipso facto prove that termination is currently in the child's best interest." *O.N.H.*, 401 S.W.3d at 684. "A factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent." *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.). In conducting a best interest analysis, we consider direct evidence, circumstantial evidence, subjective factors, and the totality of the evidence. *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *Application*

At the time of trial, O.J.C. was almost three years old and C.C. was one year old. When a child is too young to express his desires, the factfinder may consider whether the child has bonded with his current caregiver, is well-cared for, and has spent minimal time with the parent. *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.); *Holley*, 544 S.W.2d at 371–72 (desires of child). The trial court heard testimony from the Department removal worker's supervisor, the Department caseworker, and C.C.'s paternal grandmother, explaining the children were removed from C.M.C.'s care and placed with the grandmother when C.C. was born and O.J.C. was almost two years old. Specifically, the grandmother testified she had been caring for the children since C.C. was two days old, and she planned to do whatever was necessary to become the permanent caregiver for the children. The Department caseworker also testified the current placement was meeting the children's needs, including some medical issues C.C. encountered regarding stiffness. He testified he did not have any concerns with the current caregiver, and the children were "doing great." When asked whether C.M.C. had a bond with her children, he testified based on the visitations he monitored, he believed C.M.C. had a bond with O.J.C., but it was unclear whether she was bonded with C.C. He also testified C.M.C. did not consistently attend her scheduled visits, but he added she was appropriate during her visits. Based

on this testimony, a factfinder could have formed a reasonable belief or conviction the children were well-cared for by the current caregiver and C.M.C. spent minimal time with them. *See J.D.*, 436 S.W.3d at 118; *see also In re Q.M.,* No. 14-17-00018-CV, 2017 WL 1957746, at *10 (Tex. App.—Houston [14th Dist.] May 11, 2017, no pet.) (mem. op.) (discussing how lack of visits reduced bond between parent and child in best interest analysis).

The bulk of the Department's case centered on concerns regarding C.M.C.'s illegal drug use. "A factfinder can give 'great weight' to evidence of a parent's drug use, which supports a finding that termination is in the children's best interest." *In re T.N.J.J.*, No. 04-19-00228-CV, 2019 WL 6333470, at *5 (Tex. App.—San Antonio Nov. 27, 2019, no pet.) (mem. op.) (quoting *In re E.R.W.*, 528 S.W.3d 251, 266 (Tex. App.—Houston [14th Dist.] 2017, no pet.)). This court has repeatedly pointed out illegal drug use exposes children to the possibility of a parent being impaired or imprisoned and is relevant to determining whether a parent can provide her children with stability and consistency. *See, e.g.*, *In re B.F.H-J.*, No. 04-20-00461-CV, 2021 WL 111922, at *3 (Tex. App.—San Antonio Jan. 13, 2021, no pet.) (mem. op.) ("Frequent drug use is relevant to a best interest determination . . . ."); *T.N.J.J.*, 2019 WL 6333470, at *5; *In re Z.R.M.*, No. 04-15-00063-CV, 2015 WL 4116049, at *6 (Tex. App.—San Antonio July 8, 2015, no pet.) (mem. op.) ("Drug-related conduct is a significant factor to which a factfinder can give great weight in evaluating the best interests of the child.").

Here, the Department produced evidence it removed the children from C.M.C.'s care because she engaged in illegal drug use. The Department removal worker's supervisor testified the children were removed because C.M.C. and C.C. tested positive for amphetamines when C.C. was born. She testified the Department interviewed C.M.C. at the hospital, and C.M.C. denied using drugs. The Department caseworker later assigned to the case added, however, C.M.C. admitted to him she used drugs throughout the case. He testified he set up drug testing for C.M.C.

approximately eight months before trial, and she tested positive. He also explained he referred C.M.C. to a treatment recovery program at San Antonio Lifetime, but C.M.C. did not start attending the program until two weeks before trial. He further testified he spoke to C.M.C. a week before trial, and C.M.C. admitted she was still using illegal substances. The trial court also heard testimony from C.C.'s paternal grandmother, who testified she had concerns about C.M.C. using illegal drugs with her son, C.C.'s father. Based on this evidence, the factfinder could have inferred C.M.C.'s continued drug use would endanger the children by exposing them to emotional and physical danger. *See In re H.A.J.R.*, No. 04-21-00220-CV, 2021 WL 5088734, at *4 (Tex. App.—San Antonio Nov. 3, 2021, pet. denied) (mem. op) (concluding trial court could have formed firm conviction mother's continued illegal drug use constituted emotional and physical danger to children); *In re J.J.J.*, No. 04-17-00254-CV, 2017 WL 3044584, at *2 (Tex. App.—San Antonio July 19, 2017, pet. denied) (mem. op.) (explaining it was reasonable for factfinder to infer mother's continued drug use endangered children).

The Department caseworker further testified despite his attempts to engage with C.M.C., she did not comply with all the service plan's requirements. A parent's performance under a service plan is relevant to a best interest analysis. *In re A.C.B.*, 198 S.W.3d 294, 298 (Tex. App.—San Antonio 2006, no pet.). Here, the evidence shows the Department caseworker reviewed the importance of completing the service plan with C.M.C., and by the time of trial, C.M.C. had not completed a parenting program, a psychological evaluation, individual counseling, or a substance abuse program. He testified C.M.C. attended some of her visits with her children, but she would often show up late or not at all. He explained she was allowed to visit the children once a week, and she "averaged about one to two a month." He further testified there were periods of time when he did not hear from C.M.C., but then she would reappear and ask to reengage in services. He

testified he would then set up new appointments for her regarding different services, and she would not attend the appointments.

Similarly, C.M.C.'s therapist testified she communicated the importance of the service plan requirements to C.M.C. She testified she met with C.M.C. four times over the course of a year; she described C.M.C.'s attendance as sporadic. She added at one point, she discharged C.M.C. for failure to participate, but C.M.C. reengaged earlier that year—a month before trial. When C.M.C. reengaged with her therapy appointments, C.M.C. told the therapist she had completed her parenting classes, but she still needed to attend counseling and a drug treatment program. The therapist added she did not verify C.M.C.'s statements.

Regarding the other service plan requirements, the Department caseworker testified C.M.C. did not have a stable home; instead, she was living with her cousin and sleeping on the couch. He further testified C.M.C. told him she worked at IHOP, but she never provided proof of employment. He added C.M.C. never provided any financial assistance, such as food, diapers, or clothing, for the children. When he asked C.M.C. what her long-term intentions were, C.M.C. told him she knew she could not provide for her children due to her continued drug use, and she knew the children were in a stable home, which provided for their needs. He concluded his testimony by stating termination of C.M.C.'s parental rights would be in the children's best interest because "[she] has not addressed the reasons for removal. She continues to engage in illegal substances. She's not provided for the children physically, emotionally, and financially." Accordingly, as the factfinder, the trial court could have reasonably formed a firm belief or conviction C.M.C. was unwilling to effect the positive environmental and personal changes necessary to parent her children. *See H.A.J.R.*, 2021 WL 5088734, at *5 (pointing out mother's failure to engage in services required by the family service plan was relevant to best interest determination); *see also* TEX. FAM. CODE § 263.307(b) (10), (11) (stating trial court can consider parent's willingness to

seek out, accept, and complete services to effect positive environmental and personal changes when making best-interest determination).

C.M.C. contends this evidence is insufficient to support a best interest finding, and she points out it shows she was making progress in her service plan by visiting the children, being employed, and addressing her illegal drug use by attending a drug treatment program. However, the completion of some tasks does not necessarily result in reunification. *See In re M.C.G.*, 329 S.W.3d 674, 675 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (reasoning parent's excuse for failing to complete service plan goes to best interest determination and Family Code does not provide for substantial compliance). Moreover, the evidence shows C.M.C. recognized her illegal drug use prevented her from providing the necessary care for her children, but she did not attempt to seek help for her drug use until two weeks before trial. *See In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *3 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.) (pointing out parent's late attempt to complete service plan was relevant in best interest analysis); *In re S.R.*, 452 S.W.3d 351, 368 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (characterizing parent's changes shortly before trial as too late in best interest analysis). The trial court also heard evidence C.M.C. continued to use illegal drugs and did not consistently visit the children, have stable housing, or provide financially for the children. Meanwhile, the children were "doing great" in their current placement, who planned to adopt the children. Based on this evidence, the trial court was able to infer C.M.C.'s continued drug use could recur in the future. *See D.M.*, 452 S.W.3d at 471.

Accordingly, after viewing the evidence in the light most favorable to the finding, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of C.M.C.'s parental rights is in the children's best interest. *See J.O.A.*, 283 S.W.3d at 344. And, when reviewing and weighing all the evidence, including evidence contrary to the trial court's

findings, we conclude the disputed evidence weighing against the trial court's best interest finding is not so significant that a factfinder could not have resolved it in favor of the finding. *See id*. Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best interest finding. *See id*.

## CONCLUSION

Based on the foregoing, we affirm the trial court's order terminating C.M.C.'s parental rights to O.J.C. and C.C.

Luz Elena D. Chapa, Justice